STITT *v.* LOCOMOTIVE ENGINEERS' MUTUAL PROTEC-
TIVE ASSOCIATION.

1. INSURANCE — INDEMNITY POLICY — MUTUAL BENEFIT ASSOCIA-
TIONS.

Under a policy of indemnity against loss of employment
occasioned by discharge of the insured or his suspension
as a penalty or method of discipline, containing a con-
dition that knowingly disobeying orders or rules should
not be included among the insurable causes of discharge,
and that the insured must show by his notice of claim
and accompanying proofs that his suspension or dis-
charge was strictly within the terms of the certificate
or policy, and that the cause assigned by the employer
should be the sole basis of determining liability, such
assigned cause must be taken as a basis or general rea-
son for the discharge, and could not be contradicted, but
it would be an unreasonable construction to hold that
plaintiff could not recover unless his employer stated
as cause of his discharge all the stipulated conditions
or provisions essential to liability.[1]

2. SAME.

Both application and policy must be construed together
as constituting the contract, and plaintiff is presumed
to have read and understood both.

3. SAME—DISCHARGE—MASTER AND SERVANT.

And under its conditions plaintiff could only recover if
his discharge or suspension was in the nature of a
penalty, the word discharge presumptively meaning that
the employer no longer needs or desires the servant's
services and terminates the contract relation.

4. SAME—CONTRACTS—CONSTRUCTION—PENALTY.

Penalty indicates punishment for doing or failing to do a
required act.

5. SAME—DISCIPLINE.

But the word discipline as employed in the contract signi-
fied instruction, or the communication of knowledge and

training to observe and act in accordance with rules or orders and was used in the sense of correction, chastisement, or punishment inflicted by way of training.

6. SAME—CONDITIONS PRECEDENT—NOTICE TO INSURER.

Where plaintiff's notice of claim given to the insurer did not indicate that his suspension or discharge was a penalty or measure of discipline, and not for knowingly disobeying orders or rules, and the policy required specifically that his statement must show that he was within the provisions of the certificate, he could not recover, and a verdict was properly directed for defendant.

Error to Bay; Collins, J. Submitted June 19, 1913. (Docket No. 56.) Decided September 30, 1913.

Assumpsit by Raleigh K. Stitt against the Locomotive Engineers' Mutual Protective Association under an indemnity policy. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Hall & De Foe,* for appellant.

*Cavanaugh, Wedemeyer & Burke,* for appellee.

STEERE, C. J. Plaintiff brought this action in the circuit court of Bay county to recover an indemnity of $15 per week, during 33 1/3 weeks, for loss of time by being out of employment, under an indemnity policy issued to him by defendant. The case was tried December 16, 1912, before a jury. The testimony was mostly documentary; plaintiff being the only witness sworn. The trial resulted in a judgment for defendant on a directed verdict, and, after denial of a motion for a new trial, plaintiff removed the proceedings to this court for review upon a writ of error.

When insured, plaintiff was a locomotive engineer running freight engines hauling freight trains in the employ of the Grand Trunk Railway system. He

joined the defendant association in July, 1911, was suspended from his employment for violation of orders September 1, 1911, and was never reinstated, being discharged 18 days later for the same reason. On April 26, 1912, he began this action.

On July 12, 1911, plaintiff made written application for membership in the defendant association, which application was in part as follows:

"I further agree that in case my application is accepted, and I at any time thereafter become a claimant, to furnish said association with full and complete proofs of my claim, furnishing the statement of any reliable witnesses or persons who may have knowledge of the matter, and that the cause assigned by my employer for suspension or discharge shall be the sole basis of determining the liability of the association."

The next day the defendant issued to him a certificate of membership, insuring him—

"Against loss of time by being out of employment, occasioned by his discharge or suspension as a penalty or method of discipline, from his present position as a locomotive engineer, subject to the conditions as hereinafter stated."

The indemnity was limited to $500, being $15 per week for not to exceed 33 1/3 weeks. Said certificate of membership also provided:

"Notice of every claim must be signed by the applicant and must set forth the reasons for which he is under suspension or discharge, and must show by his own statement and the statements of at least two other persons who are acquainted with the facts in the case that such suspension or discharge is within the provisions of this certificate and that he is clearly entitled to the indemnity applied for. * * * Time is strictly the essence of this provision and unless notice is mailed to the home office of the association in the manner and within the time specified, no

rights shall accrue to the member and no claim shall be made nor indemnity paid under this certificate.

"This certificate does not include nor cover any suspension or discharge not in the nature of a penalty or measure of discipline nor any case arising or traceable to any of the following causes or conditions, viz.:  *  *  *  knowingly disobeying orders or rules.

"The member shall, as a condition precedent to the establishment of his claim, furnish under oath such reasonable proofs in addition to his notice of loss as may be demanded of him by the association, and failure or refusal to furnish such proofs within ten days after same are demanded of him in writing, shall estop and prevent him from asserting any rights as a claimant under this certificate."

The acts for which plaintiff was suspended and subsequently discharged were committed August 21, 1911, and the cause assigned by the railroad company in discharging him is stated in his notice of claim for indemnity to have been "for exceeding speed limit of eight miles per hour over Raisin River bridge and for using interlocking plant at Slocum, Mich., with signals set against me."

His notice of claim was returned with a request for further information, and he added the following:

"In regard to attached request for further information, I would say there was a bulletin in bulletin book at Lang terminal restricting the speed of trains to eight miles per hour over Raisin River bridge at Monroe, but that there had never been any special orders issued to this effect. And, farther, that the superintendent of the line of which this bridge is a part reported my speed over this bridge at a rate much exceeding the speed used in crossing same.

"Farther, in using hand signal at home semaphore at Slocum, I did this strictly according to the interlocking rules, which allow an engineman to use hand signals, from the towerman, providing the towerman is on the ground when giving the signal (and the signal is meant for the train using the same, without a doubt), in which case the train must approach the

signal under full control and know that derails are properly set. All these instructions were carried out, and the signal I acted on could have been for no other train, as there was no other train approaching crossing in either direction."

His two witnesses, the conductor and fireman, gave, respectively, the "details" of the acts on which his discharge was based as—

"Exceeded speed limit over Raisin River bridge at Monroe, and used hand signal in crossing Michigan Central interlocked crossing instead of receiving and using semaphore. * * * Exceeded speed limit over Raisin River bridge, and used hand signal instead of semaphore at Michigan Central interlocked crossing."

Plaintiff paid all dues and assessments called for by defendant, and was a member in good standing at the time he was suspended, on September 1, 1911. He testified that he had been an engineer on the Grand Trunk Railway for four years; that, as was his duty, he had familiarized himself with the rules and bulletins of the company; that he was familiar with the bulletin order in relation to rate of speed for trains crossing the Raisin River bridge, exceeding which was one of the reasons assigned by the company for his suspension and discharge; that neither the railway company nor any of its officials ever assigned as a reason for his suspension or discharge that he *knowingly* violated any rule of the company. The following question asked him by his counsel was objected to, and the objection sustained: "*Q.* State the circumstances under which you ran over that bridge?"

It was conceded by both parties that no issue of fact for the jury was involved, and each asked a directed verdict.

Plaintiff's counsel contended at the time of the trial that, inasmuch as the policy provided distinctly that

the reason assigned by the company upon his discharge as to the cause of discharge shall be the sole measure of determining his liability, and, it not being stated that he was suspended or discharged for *knowingly* doing the acts stated as a reason for his discharge, a verdict should be directed in his favor, for the reason that this certificate, or policy, stated, as a condition, that it did not include nor cover any suspension "not in the nature of a penalty or measure of discipline, nor  *  *  *  *knowingly* disobeying orders or rules."

In construing the policy before directing a verdict for defendant, the court said, addressing counsel for plaintiff:

"It is your contention, and it is the contention of the defendant, that the cause assigned by the railroad company is the cause. The cause assigned by the railroad company, as described by the plaintiff, and as described by these witnesses, assigned as cause of an act, the doing of which act was knowingly done, the doing of the act implies that it was knowingly done."

Plaintiff promptly made a motion for a new trial, again urging that a proper construction of the policy entitled him to a directed verdict in his favor, and further contending that, if such view did not prevail, he was entitled to have submitted to the jury as an issue of fact the question of whether or not he knowingly disobeyed any rules or orders of his employer. Upon this proposition the contention of his counsel is stated in said written motion for a new trial as follows:

"On the trial of the issue it was mistakenly assumed by both counsel for plaintiff and counsel for defendant, and such issue was submitted to the court on the theory that the provision in the application that the cause assigned for suspension or discharge should be the sole basis for determining the liability of the defendant means that the employer should by

the cause assigned determine the liability as between plaintiff and defendant, without leaving the issue as to whether the plaintiff in disobeying the orders and rules did so knowingly, while in fact the true construction of such provision in said application is that the cause assigned by the employer for suspension or discharge merely refers to the reason for such suspension or discharge, and precludes either plaintiff or defendant from assigning any other reason therefor, leaving the question as to whether the disobedience of orders or rules which led to the suspension or discharge was a knowing disobedience on the part of plaintiff to be determined as an issue of fact in the case, for which reason the question of whether such disobedience by the plaintiff was in fact knowing should have been submitted to the jury as a question of fact."

In its reasons for denying such motion, the trial court, among other things, stated:

"The proofs of loss or proofs of claim filed by the defendant show that he knowingly violated a rule of his employer in exceeding the speed limit over the Raisin River bridge at Monroe, Mich., and for accepting a hand signal, crossing interlocker plant with semaphore set against him.

"Under the policy sued on in this case, when it appears that the insured is employed by a railroad company, and that he is discharged, and that the effect of the order discharging him is a finding on the part of his employer that the insured was discharged for knowingly disobeying an order or rule of the company, as between the insurance company and the insured the finding of the railroad company is conclusive and binding, and cannot be disputed by the insured. That is a part of his contract of insurance."

We do not think a fair and reasonable interpretation of the contract limits the inquiry to the cause assigned by the employer, as contended by defendant, by reason of the provision that it should be "the sole basis of determining the liability of the association." It must be taken as the basis, as the general

reason of discharge, and cannot be contradicted; but the employer is not a party to the contract of indemnity, nor presumably interested in it; and it would be an unreasonable construction to hold that plaintiff cannot recover unless the employer states, and assigns as cause, all the numerous provisions, exceptions, and conditions in detail essential to a recovery with which defendant has freighted its policy. But it is incumbent upon plaintiff, under his contract, in harmony with the cause assigned by the employer, and with it as the sole basis, to set out in his notice of claim, aver, and establish in his proofs that which by his contract is essential to a recovery.

The contract must govern, though it may be more harsh and unfavorable to plaintiff than defendant. Courts do not make contracts for parties; they can only construe and administer them.

Defendant is of that class of mutual indemnity or insurance companies organized, apparently without capital, on the assessment plan to secure to its members a continuance of wages, when out of employment, for a certain length of time, under specified conditions. Those conditions seem to be conspicuously numerous and stringent in this instance; but a member of such an association is at the same time an insurer and an insured. In contemplation of law he is a party to imposing the conditions and restrictions in the policy issued to members.

When he accepts such policy, his rights as an insured are determined by its terms, whatever they may be. His application and certificate of membership, or policy, must be taken and construed together as constituting the contract between the parties. He is presumed to have read his application and been fully acquainted with its contents. *Briggs* v. *Insurance Co.*, 65 Mich. 52 (31 N. W. 616). Plaintiff makes no claim in this case that he was not, and in answer to numerous questions in his application cer-

tifies, over his signature, that he understands its provisions.

While all insurance, strictly considered, is for indemnity, this is of that special kind more conspicuously so, and is often called "indemnity insurance," as distinguished from fire, marine, life, and other more common forms of insurance. A careful study of the contract leads to the conviction that it is not favorable to the insured, and his rights under it are limited. The fact that he has been suspended or discharged, standing alone, gives him no rights. It is only when his suspension or discharge is in the nature of a 'penalty or measure of discipline, that he may urge his claim at all. This would seem to cast particular difficulties in his way in case of discharge.

A discharge presumptively means that the employer no longer needs or desires his services; that he is done with him, and all contract relations are at an end. In such case it is difficult to see why the employer should dispense with his services as a penalty, or to discipline him.

In a popular sense it can be said all persons discharged from a satisfactory and profitable employment are penalized and disciplined in the particular that penalty and discipline are punishment; but a penalty in legal significance indicates a punishment inflicted by a law for its violation, including both fine and forfeiture, or imposed by contract for doing or failing to do something in violation of the contract obligations.

While "discipline" has no technical, legal meaning, it in common and most general use signifies "instruction, comprehending the communication of knowledge and training to observe and act in accordance with rules or orders," or, as it may be inferred was the meaning intended here, "correction, chastisement, or punishment inflicted by way of training." By the terms of the policy this must be an element

before recovery can be had, and there is no statement in the cause of suspension or discharge assigned by the railway company, nor in plaintiff's notice of claim and the accompanying statements of his two witnesses, that his employment was terminated as a penalty or measure of discipline.

Even though such was the cause, and it was properly set out in his notice of claim, he would yet have no right to indemnity, if the cause arose from, or was traceable to—

"Absence from engine while in charge of same; nor for any act or acts while in charge of your engine, use of intoxicating liquors, soliciting his own discharge or suspension, striking, garnishment, fighting, assaulting superior officers, knowingly disobeying orders or rules," etc.

No mention is made of these matters in his notice of claim, nor in the cause assigned by his employer.

Plaintiff's contract specifically and distinctly requires that his notice of claim, corresponding to proofs of loss in ordinary insurance—

"Must show by his own statement and the statements of at least two other persons who are acquainted with the facts in the case that such suspension or discharge is within the provisions of this certificate and that he is clearly entitled to the indemnity applied for."

Both plaintiff's statement and those of his two witnesess fail in numerous particulars, beside the allegation that he did not knowingly disobey orders or rules, to show that his suspension and discharge are within the provisions of his contract, though he was requested, and given further time, to submit additional, full, "final, and complete proofs."

The contract under which he brings suit makes it obligatory upon him to establish those things requisite to show himself entitled to indemnity, in order to make out a *prima facie* case. In this he

failed, and we are constrained to conclude that the trial court correctly determined "that the plaintiff has not, as a matter of law, shown a case against defendant."

The judgment is affirmed.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.