MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMMISSION.

No. 31884. April 2, 1946.

*167 P. 2d 884.*

Robert W. Richards, of Oklahoma City, and Walace Hawkins, of Dallas, Tex., for plaintiff in error.

E. L. Mitchell, W. F. Speakman, and A. L. Herr, all of Oklahoma City, for defendant in error.

HURST, V. C. J. This is an appeal by the Magnolia Pipe Line Company from an order of the Oklahoma Tax Commission assessing additional income taxes against it for the years 1939 and 1940.

The taxpayer is a corporation engaged in the transportation of oil in interstate commerce, whose income, for the years in question, was derived from sources partly within and partly without the State of Oklahoma. The questions for determination are: (1) The proper formula to be applied in allocating a proportion of such income to the State of Oklahoma for income tax purposes, and (2) the proper method of deducting Oklahoma taxes in computing such income. The answer to these questions depends upon the construction of the applicable statutes, and each will be discussed separately.

1. It is conceded that for the years in question it was impractical to make a direct allocation of the taxpayer's income as provided for by section 8 (d) of the Oklahoma Income Tax Law of 1935, as amended by H. B. 603, S. L. 1939 (see Appendix, 68 O. S. A. page 825), and that the proper formula to be applied is contained in either section 8 (e) (3) or sec. 8 (f) of said act. Section 8 (e) (3) (herein referred to as the "three factor formula") provides

that the income, where direct allocation is impracticable:

" . . . shall be allocated by taking the arithmetical average of the following factors:

"(1) The ratio of the average accumulated investment at the beginning and close of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on within this State to the average of the accumulated investment at the beginning and close of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on everywhere;

"(2) The ratio of the total cost of manufacturing (including collecting, assembling, processing, or operating) or selling, depending upon the particular type of business, properly attributable to the business carried on within this State during the taxable year, to the total of such costs in connection with business transacted everywhere during the taxable year . . . "

"(3) The ratio of the gross sales or gross revenue in connection with the business transacted partly within and partly without this State during the taxable year . . . to the gross sales or gross revenue from business transacted everywhere during the taxable year; . . . ."

Section 8 (f) of the act provides that in the case of interstate transportation and transmission companies, including oil pipe line companies,

" . . . the rules of allocation provided by paragraph 3 of subdivision (e) of this Section may be subject to the following provisions and/or exceptions;"

"Railroad and Interburban Railway Companies: (1) *All operating revenues* shall be allocated to this State in accordance with the allocation of operating revenues to States as prescribed by the Interstate Commerce Commission; (2) Where the actual investment within Oklahoma is not separately shown on the books and records of the company, there shall be substituted therefor the valuation as fixed by the Interstate Commerce Commission, plus additions and betterments, less retirements.

"Airline, Truck and Bus Companies: (1) The Oklahoma proportion of the investment at the beginning and end of the year shall be determined by taking the Oklahoma proportion of the investment of all real and tangible personal property having a fixed situs, and that proportion of the investment in transportation equipment, including aeroplanes, trucks and busses and their appurtenances, as reflected by the Oklahoma proportion, for the twelve months period immediately preceding, of the mileage traveled everywhere: (2) *The Oklahoma proportion of gross receipts and gross revenue* derived from interstate business shall be determined by taking the proportion of mileage traveled in Oklahoma to the mileage traveled everywhere.

"Freight Car and Equipment Companies: (1) The Oklahoma proportion of investment at the beginning and end of the taxable year, shall be determined by taking the investment of all real and tangible personal property having a fixed situs, and that proportion of the investment in transportation equipment as reflected by the Oklahoma proportion, for the twelve months period immediately preceding, of the car mileage traveled in Oklahoma to the car mileage traveled everywhere; (2) *The Oklahoma proportion of gross receipts or gross revenues* from the rental, use or operation of freight cars shall be determined by taking the proportion of car mileage traveled in Oklahoma to the car mileage traveled everywhere.

"Oil, Gasoline and Gas Pipe Line Companies: *The proportion of revenue derived from interstate business, shall be determined by taking the Oklahoma proportion of traffic units to total traffice units.* 'Traffic Units' of oil pipe lines is hereby defined to be the transportation of one barrel of oil for a distance of one mile . . . "

"Telephone and Telegraph Companies: (1) Where the actual investment within Oklahoma is not separately shown on the books and records of the company, there shall be substituted therefor the valuation as fixed by the Interstate Commerce Commission, plus additions and betterments, less retirements; (2) *The Oklahoma proportion of revenues,* shall be determined by taking the Oklahoma proportion of wire mileage to the system land plant wire mileage." (Emphasis ours.)

It will be noted that the fifth paragraph of section 8 (f), relating to pipe line companies, provides that "the proportion of revenue derived from interstate business shall be determined by taking the Oklahoma proportion of traffic units to total traffic units." It is over the meaning of this paragraph that the parties disagree.

The taxpayer contends that this paragraph constitutes an exception to the "three-factor" formula contained in section 8 (e) (3), and establishes a complete and exclusive formula for determining the proportion of its income allocable to Oklahoma. This formula is referred to as the "traffic unit" formula.

On the other hand, the Tax Commission contends that the paragraph merely furnishes a yardstick, so far as pipe line companies are concerned, for the determination of the Oklahoma proportion of gross revenue, the third of the three factors contained in section 8 (e) (3), and that the gross revenue factor, when so ascertained, is to be averaged with the two other factors (investments and operating costs) in determniing the proportion of income allocable to Oklahoma.

Under the "traffic unit" formula alone, approximately 8.37 per cent of the taxpayer's total income for 1939 and 1940 is allocable to Oklahoma for tax purposes. Under the "three-factor" formula (because of a larger proportion of investments and operating costs in Oklahoma), approximately 14.47 per cent of the taxpayer's income for these years is so allocable. (Average investment approximately 15.71 per cent, operating costs, approximately 19.31 per cent, traffic units — revenue approximately 8.38 per cent.)

a. The appellant first contends that the statute, being ambiguous, should be construed most strongly against the

state and in favor of the taxpayer. While this is the undoubted rule in proper cases (Pure Oil Co. v. Cornish, 174 Okla. 615, 52 P. 2d 832), it is inapplicable here. The rule means that the provisions of statutes levying taxes will not be extended by implication beyond the clear import of the language used. State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange, 192 Okla. 293, 135 P. 2d 46; Sutherland, Statutory Construction (3d Ed.) § 6701; Gould v. Gould, 245 U. S. 151, 62 L. Ed. 211, 38 S. Ct. 53. It does not mean that where there is doubt as to which of two tax formulae the Legislature intended to make applicable to a certain industry, that formula must be selected which will result in the lower tax for the particular taxpayer who first raises the question in the courts. It is obvious that other pipe line companies, with a different proportion of their total investments, operating costs, and traffic units chargeable to Oklahoma, will find their taxes less under the three-factor formula. Whichever formula, therefore, is determined to be applicable to pipe line companies will work to the advantage of some of such companies and to the disadvantage of others, and neither construction can be said to be "in favor of the taxpayer" or "against the state."

b. Appellant next contends that by complying with a fair and reasonable interpretation of the statute, it has discharged its duty and is relieved of further liability. It relies upon the statement in Magnolia Petroleum Co. v. Oklahoma Tax Commission, 190 Okla. 172, 121 P. 2d 1008, that a taxpayer is "permitted to make his own income tax return, and, if in doing so, he has complied with the law under a fair and reasonable interpretation thereof his duty in this regard has been performed." An examination of the syllabi and the context in that case discloses that we were merely restating the rule, discussed above, that where statutes levying taxes are uncertain they will be construed in favor of the taxpayer. The statement does not mean that where two reasonable interpreta-

tions of a statute are possible each taxpayer may compute his tax and file his return under the interpretation most favorable to him, and thereby relieve himself of future liability. If this were permitted, the same statute might be applied differently to different taxpayers. It is the duty of the courts in construing ambiguous statutes to ascertain and declare the intention of the Legislature, and the statute, as thus construed, must be applied uniformly to all taxpayers within its purview.

c. In 1941 the Legislature extensively amended the Oklahoma Income Tax Act of 1935. S. L. 1941, pp. 357-376. The amended act clearly provides that the "three-factor" formula is applicable to all businesses, and that in the case of pipe line companies the third or gross revenue factor is to be computed on the basis of traffic units. 68 O. S. 1941 § 878 (g) (3). Appellant urges that we must presume that the Legislature intended to alter the existing law, and that prior to the amendment the "three-factor" formula was not applicable to pipe line companies. Where a statute is amended the Legislature may have intended either, (1) to effect a change in the existing law, or (2) to clarify that which was previously doubtful. Sutherland Statutory Construction (3d Ed.) § 5110; 50 Am. Jur. 262, 263; 27 Am. Jur. 314; 59 C. J. 1097, 1098; State ex rel. Rankin v. Wibaux County Bank, 85 Mont. 532, 281 P. 341; Helvering v. N. Y. Trust Co., 292 U. S. 455, 78 L. Ed. 1361, 54 S. Ct. 806. Which purpose was intended by a particular amendment is to be determined to some extent from the circumstances surrounding its enactment. Sutherland, Statutory Const. (3d Ed.) §5110; People v. Davenport, 91 N. Y. 574. Where the former statute was clear, or where its meaning had been judicially determined, the amendment may reasonably indicate that the intention of the Legislature was to alter the law. Plummer v. Davis, 169 Okla. 374, 36 P. 2d 938. On the other hand, where the meaning of the former statute was subject to serious doubt, or where controversies concerning its meaning had arisen, it may be

presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed. Sutherland Statutory Construction (3d Ed.) § 5110; People v. Davenport, above.

In the instant case, section 8 of the 1935 act was poorly drawn and plainly ambiguous. While we do not place our decision herein on the theory that the amendment of 1941 constituted a legislative construction of the 1935 act, we do hold that the amendment raises no presumption of a legislative intention to alter the existing law, since it is just as reasonable to presume that the Legislature intended only to clarify uncertainties of the former law.

d. Appellant's remaining contentions are based upon the wording of the statute. It asserts that by providing in section 6 (a) of the act that income from interstate business should be allocated under the "formula or formulae" provided in section 8 thereof, the Legislature recognized that it was providing more than one formula. It may be conceded that more than one formula was provided, but the question is whether the "traffic unit" formula was complete in itself or was to be used as a substitute method of computing gross revenue, the third factor of the "three-factor" formula. The use of the words "formula or formulae" indicates that in some cases at least a combination of more than one formula was intended.

e. Appellant next urges that by providing in section 8(f) that the "rules of allocation" contained in section 8(e) (3) were to be subject to the "provisions and/or exceptions" of section 8(f), the Legislature indicated that the traffic units formula was an exception to the three-factor formula. We do not agree. The "rules of allocation" referred to are the three factors of investments, operating costs, and gross revenue. While the language is not clear, it may well indicate that the "traffic unit" formula was to be an exception to the third "rule of allocation"—that pertaining to gross revenue.

f. Appellant finally points to the provision of section 8(f) that "the proportion of *revenue* derived from interstate business" shall be determined on the basis of traffic units, and urges that the Legislature thereby evidenced an intention to provide a complete formula for determining the allocable portion of the income of pipe line companies. It asserts that "revenue" does not mean "gross revenue," and that had the Legislature intended this as a substitute method of determining the gross revenue factor contained in section 8(e) (3) it would have used the term "gross revenue." This argument would be convincing were it not for the fact that in another paragraph of the same section the Legislature used the word "revenue" when it obviously meant "gross revenue." In the last paragraph of section 8(f), relating to telephone and telegraph companies, the Legislature provided that "The Oklahoma proportion of *revenues*" should be determined on the basis of wire mileage. Yet, it cannot be doubted that there the Legislature was only providing a substitute method of computing the *gross revenue factor* of the three-factor formula, because in the same paragraph it also provided a substitute method of determining the Oklahoma proportion of investments, another factor of that formula. It is thus apparent that the Legislature did not always distinguish between "revenue" and "gross revenue," but sometimes used the terms interchangeably.

From what we have said above, it is clear that the statute is ambiguous and therefore subject to judicial interpretation. One of the primary rules of statutory construction is that an act must, where possible, be given an interpretation which will insure its just and uniform operation. 50 Am. Jur. 380, 381, 25 R. C. L. 1024; Roby v. Hawthorne (Tex. Civ. App.) 84 S. W. 2d 1108; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070. It is not to be presumed that the Legislature intended to unjustly discriminate between different cases of the same kind (50 Am. Jur. 380), and where the Legislature

has laid down a rule for one class of cases, nothing but clear and unmistakable language will warrant a construction that in the same act a different rule has been prescribed for another class of cases within the same reason as the first. 50 Am. Jur. 380; 25 R. C. L. 1024; Roby v. Hawthorne, above; Trimmier v. Carlton, above. In construing tax statutes the courts should adopt that interpretation which lays the burden of the tax uniformly on all those similarly situated. 51 Am. Jur. 365, 366; Norville v. State Tax Com., 98 Utah, 170, 97 P. 2d 937, 126 A. L. R. 1318; In re Steehler's Estate, 195 Cal. 386, 233 P. 972. See, also, Sutherland Statutory Const. (3d Ed.) § 6701, p. 396.

Bearing these rules in mind, let us examine the provisions of 8(f). It is divided into five paragraphs, each dealing with a separate type of interstate transportation or transmission company. Each of these paragraphs contains a substitute formula for the determination of gross revenue which is analogous, for the type of company concerned, to the barrel-miles or traffic unit formula. For example, the gross revenue of freight car companies is to be determined on the basis of car mileage traveled in Oklahoma. And each of the other paragraphs also provides a substitute method for determining the Oklahoma proportion of investments, the first of the three factors contained in the "three-factor" formula. Appellant concedes that the other paragraphs of 8(f) do not set forth complete formulae for the allocation of the incomes of the other types of interstate transportation companies, and that the "three-factor" formula applies to each of them, despite the fact that each of such paragraphs refers to only two of the three factors in the "three-factor" formula. As above stated, however, it contends that the paragraph dealing with with oil and gas pipe line companies does provide a complete method of allocating the income of such companies for tax purposes.

We think the fact that the paragraph relating to pipe line companies is found in a section containing four other paragraphs, all of which admittedly relate back to the "three-factor" formula, is strong evidence that the Legislature did not intend the paragraph relating to pipe line companies to stand as a complete formula of itself, but intended that it also should relate back to the "three-factor" formula.

The strongest argument, however, against appellant's contention is that to sustain it was would be forced to ascribe to the Legislature an intention to discriminate between pipe line companies and all other companies, and to presume that it intended that the factors of Oklahoma investments and operating costs should be considered in allocating the income of all other companies, but ignored in allocating the income of pipe line companies. We cannot think the Legislature intended any such result. There is no difference between pipe line companies and other companies upon which such a distinction can reasonably be based. Logically, the factors of Oklahoma investments and operating costs are pertinent and should be considered in allocating the income of all companies for tax purposes, and there is no reason why pipe line companies alone should be excepted from the rule.

Therefore, in compliance with the principles above stated, we adopt that construction which will effect a uniform operation of the statute, and hold that the income of pipe line companies is allocable under the "three-factor" formula contained in section 8(e)(3), and that the "traffic unit" formula contained in section 8(f) provides the method by which the 3rd or gross revenue factor thereof is to be determined.

By so holding we also give a uniform operation to all the paragraphs of section 8(f), for each of said paragraphs, as above pointed out, contains an analogous method by which the gross revenue factor is to be determined for other companies.

2.   The next question for . decision

concerns the proper method of deducting taxes paid on Oklahoma properties and operations. Section 9(c) of the Oklahoma Income Tax Law of 1935, as amended by H. B. 603, S. L. 1939, provides that:

"In computing the net income, there there shall be allowed as deductions from gross income: . . .

"(c) All taxes paid within the taxable year, imposed first by authority of the United States, or, second by the authority of any State or territory, or any county, school district, municipality or other taxing subdivision of any State or territory. . . ."

And section 9(i) of the same act provides:

"(i) In the case of any taxpayer whose total income is derived from sources within and/or without Oklahoma, there shall be allowed, as a deduction from the grass income derived from property owned and/or business transacted in Oklahoma, only a fair, reasonable and just proportion of all deductions of such taxpayer, enumerated in subdivisions (a) to (h), inclusive, of this Section; provided, however, that no taxpayer shall be permitted to include as a deduction from gross income arising in Oklahoma, any portion of any expense or loss attributable to property owned and/or business transacted outside the State."

The Tax Commission contends that under these provisions all taxes of the type here involved, whether paid in Oklahoma or elsewhere, should be deducted from the taxpayer's income before allocating any portion of it to Oklahoma.

On the other hand, appellant contends that taxes paid to other states should be ignored, and that after the amount of its income allocable to Oklahoma has been determined, there should be deducted therefrom all taxes paid on Oklahoma properties and operations.

A substantial difference in appellant's taxable income results from the use of the two methods. During 1939 and 1940 approximately 20% of appellant's total taxes on property and operations were paid in Oklahoma. Under the three-factor formula, however, only 14 per cent of its total income for such years was allocable to Oklahoma for tax purposes. Consequently, under the method contended for by the Tax Commission appellant would receive credit in Oklahoma for only 14/20 of the taxes which it actually paid in this state. Theoretically, if all other states in which appellant operated used the same method, appellant would receive credit in other states for the balance of such taxes.

After careful consideration, we have concluded that appellant must be allowed, as a deduction, the full amount of the taxes which it paid in this state. The assumption of the Tax Commission that proper credit for the difference will be allowed appellant in other states is mere surmise. There was no proof of the law of the other states in which appellant paid taxes, but if it was the same as that of Oklahoma (and we must presume that it was, Beck v. Davis, 175 Okla. 623, 54 P. 2d 371), credit for taxes paid in Oklahoma could not be allowed. Section 9(i), above quoted, specifically provides that "no taxpayer shall be permitted to include as a deduction from gross income . . . any portion of any *expense* or loss attributable to property owned and/or business transacted outside this state." The Tax Commission contends that under section 9(i) of the act the taxpayer is to be allowed in Oklahoma only "a fair, reasonable and just proportion" of the taxes it has paid in all states. But under the facts here, we think a "fair, reasonable and just proportion" of such taxes is the amount actually paid in this state. Otherwise, appellant would be denied credit everywhere for taxes which it actually paid—an unjust result, obviously never intended by the Legislature. Furthermore, in the case of Union Pac. R. Co. v. State Tax Comm,. 145 Kan. 715, 68 P. 2d 1 (1937), the Kansas court in an almost identical situation held that the taxpayer should be allowed to deduct from the income allocable to that state the full amount of ad valorem taxes paid by it in Kan-

sas. The second syllabus by the court reads:

"Such a corporation (one whose income is derived from sources within and without the state) is entitled to deduct from its income allocable to this state the amount of ad valorem tax paid by it to this state or its subdivisions, as well as an allocable portion of the taxes paid to the United States."

The question of whether the result would be different if it were proved that the law of the other states allowed appellant to deduct taxes paid in this state is not before us and we do not decide it.

The case is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

GIBSON, C.J., and RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur.