Lawrence A. CALVEY and Vivian H. Calvey, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 20989.

United States Court of Appeals, Sixth Circuit.

Sept. 15, 1971.

McAllister, Senior Circuit Judge, filed dissenting opinion.

William L. Goldman, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; John P. Milanowski, U. S. Atty., Grand Rapids, Mich., of counsel.

James A. Park, Lansing, Mich., for plaintiffs-appellees; Robert W. Stocker, II and Fraser, Trebilcock, Davis & Foster, Lansing, Mich., on brief.

Before EDWARDS and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Appellees Calvey, a husband and wife, brought suit for refund of cabaret taxes ($3,870.34, plus interest) which they had been assessed and had paid. The appellant United States of America filed a counterclaim for $132,872.44, plus interest, alleging fraudulent understatement of the taxes due. In the years concerned the Calveys, as partners, had operated a nightclub (the Northview Lounge) in Sault Ste. Marie, Michigan.

After full hearing a District Judge in the United States District Court for the Western District of Michigan found for the government on all issues except one. He found partnership; he found fraudulent understatement of taxes by the partnership; he found Mrs. Calvey was a partner; but because he found Lawrence Calvey to be the dominant figure in the fraudulent filing, he refused to apply any of the tax consequences of the fraud to Mrs. Calvey individually. He held that she did not participate in the fraud and knew nothing about it.

In his second opinion in this case the District Judge gave this description of the background facts:

"As pointed out in the opinion of the Court at the conclusion of the trial of the case on October 27, 1969, this business was not operated in fact as a partnership in the true sense of the word, because Lawrence Calvey was obviously at the times involved, and certainly at the time immediately preceding the trial, at the time the assessments were made, a most dominant person. Mrs. Calvey had the choice of either being completely subordinate or walking out. But it appears from the transcript of the testimony, which has only recently been received, of Mrs. Calvey, and upon reconsideration of the facts, that there is more to the partnership than we considered.

"Previously, Lawrence Calvey and Vivian Calvey's father had been partners in this business, and by her testimony on October 27, 1969, her father intended that she should have his interest and she so testified. His interest was a partnership interest. The license, admittedly, was in the name of Lawrence A. Calvey and Vivian H. Calvey, and had to be renewed annually, and had to be exposed in a conspicuous place in the business. In addition to that, she signed a number of the tax returns on the excise tax, and she signed them as a partner; and there is nothing in this record to show that Lawrence Calvey insisted that she so sign. As a matter of fact, the indication is to the contrary, that he didn't know what she put in there, and there is nothing to show that he did know. She put her name down and marked it as partner.

"Let's face it, gentlemen, she is an intelligent woman. She is not stupid. She knows what a partner is, and when she put the word 'partner' down, I am satisfied that she knew what she was doing."

It thus appears that the District Judge determined that the wife was a full partner in the operation of this nightclub, but

he found injustice in ascribing any of the fraud to her or in allowing a judgment reflecting the consequences of the fraud to be entered against her personally. In this regard he relied upon Scudder v. Commissioner of Internal Revenue, 405 F.2d 222 (6th Cir. 1968), cert. denied, 396 U.S. 886, 90 S.Ct. 176, 24 L.Ed. 2d 161 (1969).

Before this court, appellees rely on *Scudder* and also on Huelsman v. Commissioner of Internal Revenue, 416 F.2d 477 (6th Cir. 1969), and Sharwell v. Commissioner of Internal Revenue, 419 F.2d 1057 (6th Cir. 1969), as illustrating this court's reluctance to approve "appallingly harsh" results.

We hope that reluctance to endorse "appallingly harsh" results will always characterize our decisions and we note that subsequent to the three cases relied upon by appellees, Congress has moved to correct the inequity which *Scudder*, et al., pointed out. Pub.L. 91–679, Laws of the 91st Cong., 2d Sess.; 84 Stat. 2063 (1971).

The government, however, points out that *Scudder*, et al., involved joint income tax returns but did not involve partnerships. It asserts that under general partnership law and under partnership laws of the State of Michigan in particular, an innocent partner is responsible for penalties induced by fraudulent conduct of an operating partner.

It does not appear to us that this case presents either the same problems or the same inequities that were involved in the three cases relied on by appellees. All three of them involved joint income tax returns between husbands and wives. In *Scudder* and in *Huelsman* the fraud upon the government consisted of the joint taxpayer husband failing to report or pay tax on money which he had embezzled. In each case the wife was the sole or a principal victim of the embezzlement and the "fundamental unfairness" was in making the victim of a crime pay the tax consequences of the husband's failure to pay tax on the money stolen wholly or in large part from her. In short, the wife

not only did not benefit; actually she was a victim. In *Sharwell* the court merely remanded for fact finding to ascertain whether or not a similar situation existed.

In this case, however, we deal with a business partnership where the wife was an active partner and signed the partnership returns. She had inherited her share of the partnership in the Northview Lounge from her father. The accountant for the business testified that the profits of the partnership business were divided between the partners. Obviously, these profits on this record resulted in part from cabaret taxes fraudulently withheld. While the District Judge found that the husband was the dominant partner and the wife was without knowledge of the fraud (findings which we accept) we do not believe that requiring her to face the tax consequences of fraud from which she previously benefited parallels the "fundamental unfairness" found in *Scudder* and *Huelsman*.

The federal law under which the cabaret tax is assessed is set forth in 26 U.S.C. § 4231, Repealed Pub.L. 89–44, Title III, § 301; 79 Stat. 145 (1965) (effective date Dec. 31, 1965):

> "(6) *Cabarets.*—A tax equivalent to 10 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments; * * *. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph."

The term "person" as used above is defined in 26 U.S.C. § 7701(a) (1) (1964) to include a partnership. The consequences of willful or fraudulent withholding of the tax are set forth in 26 U.S.C. § 6501(c) (2) (1964) and § 6653

(b) (1964). But the federal revenue code makes no specific reference to the liability of partners as individuals.

General partnership law, however, including that of Michigan, entitles an inactive partner to his or her share of partnership profits. It also visits upon said partner his or her share of partnership liabilities, even though the liabilities were created solely by an active partner completely without knowledge of the inactive one.

The governing law pertaining to the instant case is represented by two sections of the Uniform Partnership Act adopted by Michigan in 1922:

"§ *20.13  Liability of partnership for wrongful act of partner.*] Sec. 13. Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." Mich. Stats.Ann. § 20.13 (1964), M.C.L.A. § 449.13.

"§ *20.15  Joint and several liability of partners; separate obligation of partner to perform firm contract.*] Sec. 15. All partners are liable:

(a) Jointly and severally for everything chargeable to the partnership under sections thirteen [13] and fourteen [14];

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract." Mich.Stats.Ann.  § 20.15 (1964), M.C.L.A. § 449.15.

This statute has been applied to hold partners individually liable for damages arising from partnership torts for which the partner individually had no responsibility. Soberg v. Sanders, 243 Mich. 429, 220 N.W. 781 (1928); Schram v. Perkins, 38 F.Supp. 404 (E.D.Mich.1941).

While we find no Michigan "penalty" cases, we note that Mich.Stats.Ann. § 20.13 specifically provides that the partnership is liable for "any penalty * * * incurred" by any wrongful act or omission of any partner in the ordinary course of the business. It appears clear that the fraud penalties here involved were incurred in the regular course of this partnership business. But Mich. Stats.Ann. § 20.15 also makes "all partners" liable jointly and severally for everything chargeable to the partnership under sections 13 and 14.

We see no way to exempt the instant appellee Mrs. Calvey from the tax fraud penalties without substantially amending the Michigan law of partnership.

The following cases illustrate the principles underlying the provisions of the Uniform Partnership Act: United States v. Thomasson, 28 Fed.Cas. 80 (No. 16,478) (D.Ind.1866); B. F. Goodrich Co. v. Naples, 121 F.Supp. 345 (S.D. Cal.1954); A. Sam & Sons Produce Co. v. Campese, 14 A.D.2d 487, 217 N.Y.S.2d 275 (Sup.Ct.App.Div. 4th Dept. 1961); Strang v. Bradner, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885). In this last case the United States Supreme Court in a bankruptcy case discussed the effect of fraud upon an innocent partner:

"Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their asso-

ciate in business. Stockwell v. United States, 13 Wall. 531, 547–548; 20 L. Ed. 491; Story on Partnership, §§ 1, 102–3, 107–8, 166, 168; Chester v. Dickerson, 54 N.Y. 1; Locke v. Stearns, 1 Met. 560; Lothrop v. Adams, 133 Mass. 471; Blight v. Tobin, 7 Monroe, 612; Durant v. Rogers, 87 Ill. 508; Collyer on Partnership, Wood's Ed., §§ 446, 449–50; Lindley on Partnership, Ewell's Ed., § 302." Strang v. Bradner, *supra*, at 560–561, 5 S.Ct. at 1041.

The judgment of the District Court is vacated and the case is remanded for entry of a judgment consistent with this opinion.

McALLISTER, Senior Circuit Judge (dissenting).

This case involves a claim by the federal government that, because of the Michigan partnership statute, an innocent wife is liable for a 50 percent penalty, because of the fraudulent understatement of excise taxes, in the form of cabaret taxes, of her partner husband, of which she had no knowledge, over whose fraudulent acts she had no control, and in which she in nowise participated.

The District Court held that, as a partner, she was not liable, under the provisions of the Michigan partnership statute for such a penalty and in this dissenting opinion we are in accord with the determination of the District Court.

The provision of the Michigan Partnership Law with which we are concerned is Section 20.13 of the Michigan Statutes Annotated, which states:

"Liability of partnership for wrongful act of partner Sec. 13. Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, * * * loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

The important issue in this case, therefore, is whether the term "penalty," as used in the Michigan statutes, providing for liability of a partnership resulting from the wrongful act of any partner, is used according to its meaning in the law of contracts, or as punishment for a civil or criminal wrong.

The word "penalty" has many meanings. Judge Stanley Matthews, speaking for the Court in City of Cincinnati v. Wright, 77 Ohio App. 261, 267, 67 N.E.2d 358, 362, said: "In the law of contracts [penalty] is used as contra-distinguished from liquidated damages. It is also used to indicate the sum to be forfeited upon breach of a bond. And in common parlance it expresses any disadvantage resulting from an act." The words "penal" and "penalty" have many different shades of meaning, and are among the most elastic terms known to law. Ward v. Rice, 29 F.Supp. 714, 715 (D.C.Pa.)

The meaning to be given the word "penalty," obviously depends upon the framework of circumstance in which it is used. When used in a statute relating to partnerships, we look, first, to what a partnership is. "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 535, 90 L.Ed. 670.

A statute imposing a penalty must be limited in its operation to such persons as fairly come within its provisions, and it cannot be extended by implication. State ex rel. Murray v. Mortgage Security Corporation of America, 175 Okl. 503, 53 P.2d 560, 561; and under a statute making "any person" who violates a statute liable, the penalty is applicable only to the one derelict in duty and personally guilty of the wrong. Elmira v. Johnson, 151 App.Div. 728, 136 N.Y.S. 471.

What meaning is the term "penalty" to be given in the above provision of the

statute, as that term was used by the Michigan legislature in reference to partnerships? Does it mean a penalty in the law of contracts as contra-distinguished from liquidated damages, or a forfeiture for a breach, or stipulated damages imposed by contract for doing or failing to do something in violation of the contract obligations? Stitt v. Locomotive Engineers' Mutual Protective Association, 177 Mich. 207, 215, 142 N.W. 1110. All of the foregoing are described as penalties. Or does it mean a penalty imposed for criminal conduct, which is punitive, even though enforceable by civil proceedings? La Franca v. United States, 37 F.2d 269 (C.A.5), aff. 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551. Is it to be interpreted in such a way that an innocent partner is liable to a 50 percent penalty for the criminal act of another partner?

There are certain presumptions governing the construction of statutes. A presumption is resolved against any unjust consequences. Porter v. Nowak, 157 F.2d 824 (C.A.1); Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 196 Okl. 633, 167 P.2d 884.

To hold for the Government would clearly result in the worst kind of injustice for Mrs. Calvey.

The District Court found that Mr. Lawrence Calvey, a partner of his wife, was responsible for filing false excise tax returns, which he generally signed; that he knew they were false; that he filed the returns to avoid payment of the cabaret tax; that he filed the tax returns knowingly, with intent to avoid the payment of the tax which was rightfully owing; and that his action amounted to a fraud against the Government. The District Court held that Mr. Calvey's wife, Vivian, knew nothing about the fraud and, as the court said: "I don't see any reason why she should be forced to pay a penalty for fraudulent acts over which she would exercise no control and about which she knew nothing, in which fraud she did not participate."

The Government is attempting to hold the partnership for the 50 percent penalty, in order to subject Mrs. Calvey to payment of the penalty, under a provision of the Michigan statute that all partners are jointly and severally liable for everything chargeable to the partnership. Mrs. Calvey admits liability as a partner for the non-payment of the excise taxes. All the joint property of both Mr. and Mrs. Calvey is, admittedly, subject to the debt of the non-paid excise taxes. However, the Government insists on subjecting Mrs. Calvey's separate property, which she owned before her marriage and before her partnership with her husband, to the penalties of approximately $50,000.00 for the fraud committed by her husband, of which she had no knowledge—an amount which would consume all of her separate property.

The only way the Government could seize Mrs. Calvey's separate property is under the claim that she is liable for the 50 percent penalties for her husband's fraudulent returns and non-payment of the excise taxes.

In order to seize Mrs. Calvey's separate property, the federal government must rely upon its construction of the section of the Michigan partnership statute, providing that where, by the wrongful act of any partner acting in the ordinary course of the business of the partnership, loss or injury is caused to any person, not being a member of the partnership, or any penalty is incurred, as meaning that the partnership is liable therefor to the same extent as the partner so acting. Since the partnership statute provides that a partner is jointly and severally liable for everything chargeable to the partnership, the Government contends that Mrs. Calvey, an innocent member of the partnership, is individually liable for the criminal act of her husband, committed without her knowledge, and that her separate property acquired before her marriage may be taken by the Government for her husband's misconduct.

The rule that guilt is personal applies as well to partnerships as to other relations. A partner is not chargeable criminally with the acts of a copartner merely by reason of the partnership relationship,

and no criminal liability may attach to the partnership or its members, in the absence of personal participation in the criminal act, assent thereto, or knowledge thereof.

Mrs. Calvey's husband was criminally liable for making the false returns knowingly, to avoid payment of the excise tax. Title 26, U.S.C.A., Sec. 7207. Congress intended that the 50 percent addition would be a civil incident to the criminal act. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. Nevertheless, to hold Mrs. Calvey personally liable for the 50 percent addition to the tax is a clear case of injustice. The Government relies on Title 26, U.S.C.A. Section 6653, which provides:

"(b) Fraud.—If any part of any underpayment *(as defined in subsection (c))* of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).

(c) Definition of underpayment.—For purposes of this section, the term 'underpayment' means—

(1) Income, estate, and gift taxes.— In the case of a tax to which section 6211 (relating to income, estate, and gift taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a) (1) (A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing), and

(2) *Other taxes.—In the case of any other tax,* the amount by which such tax imposed by this title exceeds the excess of—

(A) The sum of—

(i) the amount shown as the tax by the taxpayer upon his return (determined without regard to any credit for an overpayment for any prior period, and without regard to any adjustment under authority of sections 6205(a) and 6413(a)), if a return was made by the taxpayer within the time prescribed for filing such return (determined with regard to any extension of time for such filing) and an amount was shown as the tax by the taxpayer thereon, plus

(ii) Any amount, not shown on the return, paid in respect of such tax, over—

(B) The amount of rebates made. * * * *"

The above provision was seized upon by the Government to hold an innocent spouse liable for the 50 percent penalty, when her spouse fraudulently understated the amount due on a joint income tax return and, in such cases, the Government prevailed against the innocent spouse. Obviously, this was an injustice inflicted upon the wife.

When Congress found that the Internal Revenue Service was inflicting such 50 percent penalties upon innocent spouses, it acted to put an end to such injustice and passed H.R. 19774—Public Law 91–679; 84 Stat. 2063, providing, with regard to joint returns of income tax, that the 50 percent penalty did not apply to an innocent spouse.

Thus, in the Senate Report No. 91–1537 to accompany H.R. 19774—the statute to remedy such injustice, it was stated that the proposed bill provided relief for the situations that had "been brought to the attention of the committee [on Finance] in connection with the imposition upon innocent spouses of large liabilities for taxes and penalties attributable to income omitted from a joint return by the other spouse. In several situations, under existing law, the Internal Revenue Service has been successful in assessing income tax liabilities and penalties (attributable to an omission from income) against a spouse wholly innocent of any wrongdoing insofar as the omission is concerned. This

bill provides that, where certain situations exist, the 'other spouse' is to be relieved of tax liability to the extent that the liability is attributable to an omission from income. The bill also affords relief from the imposition of the 50-percent fraud penalty where the underpayment in tax is not attributable to the fraud of the spouse." The report went on to say that *"the imposition of joint liability upon an innocent spouse has resulted in the committee's opinion, in grave injustice."* (Emphasis supplied.)

In the instant case, the Government had relied on Title 26, U.S.C.A., Sec. 6653, for the imposition of the 50 percent penalty upon the innocent spouse, Mrs. Calvey. However, the remedial-amending statute enacted pursuant to the aforementioned Senate Report added to Sec. 6653, the following:

"Sec. 2. Section 6653(b) of the Internal Revenue Code of 1954 (relating to failure to pay tax) is amended by adding at the end thereof the following new sentence: 'In the case of *a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.'* (Emphasis supplied.)

"Sec. 3. The amendments made by the first two sections of this Act shall apply to all taxable years to which the Internal Revenue Code of 1954 applies. Corresponding provisions shall be deemed to be included in the Internal Revenue Code of 1939 and shall apply to all taxable years to which said Code applies."

The statute was approved January 12, 1971.

In the Senate Report on the amended statute, attention was called to the case of Louise M. Scudder, 48 T.C. 36, 41, in which Judge Hoyt, speaking for the court, said:

"Although we have much sympathy for petitioner's unhappy situation and are appalled at the harshness of this result in the instant case, the inflexi-ble statute leaves no room for amelioration. It would seem that only remedial legislation can soften the impact of the rule of strict liability for income taxes of the many married people who are unknowingly subjected to its provisions by filing joint returns."

Nevertheless, in the above case, on appeal, Judge O'Sullivan, speaking for this Court, said:

"The [Tax] Court, however, indicated that there was no trickery or fraud practiced upon Louise by her husband. The holding of the Tax Court, and other courts, that duress, trickery and fraud practiced upon a wife will, in certain factual contexts, prevent her being subjected to liability of the kind here involved, derives not from language of relevant tax statutes *but from the general rules of law and equity."* Scudder v. C. I. R., 405 F.2d 222, 226 (C.A.6) (Emphasis supplied.)

In the foregoing case the taxpayer's husband had failed to report in joint returns amounts of unauthorized withdrawals from the partnership in which his wife was a partner, and which was managed by the husband. The wife was an innocent victim of the conduct of her husband, who exhausted his assets in making partial reimbursement to the partnership. The Court held that the Commissioner had improperly assessed tax deficiencies and fraud penalties against the innocent wife, based on the husband's withdrawals from the partnership.

In the majority opinion it is emphasized that the instant case is differentiated from the *Scudder* case, because in the *Scudder* case the fraud upon the Government consisted of the joint taxpayer husband's failing to report or pay tax on money which he had embezzled; that the wife was the sole or principal victim of the embezzlement and the "fundamental unfairness" was in making the victim of a crime pay the tax consequences of the husband's failure to pay tax on the money stolen wholly or in large part from her. "In short," it is said, "the wife not only did not benefit; actually

she was a victim." The majority opinion also states: "The accountant for the business testified that the profits of the partnership business (of Lawrence A. Calvey and Vivian H. Calvey) were divided between the partners. Obviously, these profits on this record resulted in part from cabaret taxes fraudulently withheld. While the District Judge found that the husband was the dominant partner and the wife was without knowledge of the fraud (findings which we accept), we do not believe that requiring her to face the tax consequences of fraud from which she previously benefited, parallels the 'fundamental unfairness' found in *Scudder* and *Huelsman*."

It seems that the emphasis with regard to the foregoing should be directed to the fact that the "fraud from which she previously benefited" in her husband's understatement of the cabaret tax, is concededly to be repaid by her with interest, unless tolled by the statute of limitations; and the District Court in its judgment entered judgment against her for such understated cabaret taxes and interest amounting to $20,184.35, with interest thereon at the rate of six percent per annum from May 11, 1970, to date of payment.

The foregoing is only in answer to matters emphasized in the majority opinion; and it is to be pointed out that the 1971 amendment to Section 6013 of the Internal Revenue Code of 1954 would absolve an innocent spouse from liability for the 50 percent penalty, whether a joint income tax return were filed, as in the *Scudder* case involving embezzlement, or whether an understated joint income tax return were filed by a culpable husband, and the innocent spouse was free of fraud. Congress, in its 1971 amendment, was concerned only that in case of a joint income tax return, the 50 percent penalty "shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse."

All of the foregoing is to show that Congress considered such a 50 percent penalty upon an innocent spouse a "grave injustice."

Although the Congressional amendment of 1971 is here alluded to as proof of what Congress held to be an injustice, the amendment of Section 6653(b) does not govern this case, as it relates to joint returns of income tax by husband and wife. The tax with which we are concerned is not a joint income tax, but a return of an excise tax (cabaret tax) by a husband for a partnership of himself and his wife, in which the wife is jointly liable for everything chargeable to the partnership.

It would certainly be as unjust to hold the innocent wife liable for the 50 percent penalty because of her husband's fraudulent understatement of excise tax, as it would be to hold an innocent wife liable for the 50 percent penalty because of her husband's fraudulent understatement of income tax.

The whole point upon which the innocent wife's rights rest is whether the Government's action results in grave injustice to her. And so we revert to the meaning of "penalty" in the Michigan partnership statute. "Penalty" is a word of many meanings, and is one of the most elastic terms known to law. The legal presumption governing its meaning is to be resolved against any unjust consequences. To subject an innocent person to a 50 percent penalty for another's fraud is not only an unjust consequence, but, as stated in the Senate Report above referred to, is a "grave injustice." There is no indication in the Michigan partnership statute that the separate property of an innocent wife would be liable for a 50 percent penalty for the criminal act of her husband, of which she had no knowledge, or means of knowledge.

The District Court held that "penalty," as used in the Michigan partnership statute, did not apply to the 50 percent penalty for her husband's fraudulent act of understating the cabaret income. The majority opinion finds no Michigan "penalty cases" relating to partnerships.

Granted, as set forth in the majority opinion, that a partner is liable for fraudulent representations made by another partner in the course of the partnership business, we find no authority in such a case for holding an innocent wife liable, in her personal capacity, for a 50 percent penalty because of a fraudulent understatement of her partner-husband in an excise tax return.

The liability of a partner, under the Michigan partnership statute, providing that, where by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, loss or injury is caused to any person * * * or any penalty incurred, results in the joint and several liability of all partners, is not to be construed as subjecting an innocent wife to such an extraordinary penalty of 50 percent for a criminal act of her husband in fraudulently understating an excise tax. "Penalty," being a word of many meanings— some embodying contractural liabilities, and some, criminal liabilities—is not to be construed in such a way as to result in grave injustice.

In accordance with the foregoing, I would affirm the judgment of the District Court.