## FISHGOLD v. SULLIVAN DRY DOCK & REPAIR CORPORATION.

### No. C–5700.

District Court, E. D. New York.

Aug. 30, 1945.

Knowlton Durham, of New York City, for plaintiff.

J. Read Smith, of Brooklyn, N. Y., for defendant.

William L. Standard, of New York City (M. H. Goldstein, of Philadelphia, Pa., and Herman Rosenfeld, of New York City, of counsel), for Local No. 13, intervenor.

Witt & Cammer, of New York City (Harold Cammer, of New York City, of counsel), for C.I.O., amicus curiae.

ABRUZZO, District Judge.

In this particular case it is not in dispute that the plaintiff has complied with all of the technical requirements of the statute. He was a welder working for the defend-

ant. I find that his employment was permanent and steady. He left his employment for induction into the armed service of the United States, and had to leave his position for that purpose. He received a certificate in compliance with the statute, that he had been discharged honorably. It is neither in dispute that he is qualified to perform the duties of the position of welder—he was a first class welder—and it is not in dispute that he made his application for re-employment and that he actually was re-employed after making the request under the Selective Service Act.

The plaintiff claims that he is entitled to be employed under Section 8(b) (B) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix § 308(b) (B), which reads as follows referring to the plaintiff's position:

"If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority * * *."
and I take that to mean that this plaintiff is entitled to come back to his work as a first class welder and that he is entitled to come back to work in preference to anybody else who might be working on any of the days that he applied for work, except a veteran in his own category.

The proof in this case is that there were forty-six men and five snappers working on the first day, April 9th, who were all non-veterans, and I hold that the defendant has violated the terms of the statute by not employing the plaintiff on April 9th, and that "status" and "pay," unless the employer's circumstances had been changed so as to make it impossible or unreasonable to do so, are merely descriptive words which mean that he had to be taken back as a first class welder and not as a second class welder and that his pay rate would stay the same.

I find, and I do not think there is any dispute, that the defendant's plant had not so changed that it was impossible or unreasonable to employ this plaintiff, and there is no claim to that effect whatsoever.

In reading subdivision (c), with regard to the benefits which were to be restored to him, it strengthens my belief that that is the way the veteran was entitled to employment under Section 8(b), (B), for the reason that he could not obtain any of the benefits set forth in subdivision (c) until he first got his job back, and Congress intended that he was to be entitled to his job over everybody else but a veteran in his own category. Subdivision (c) strengthens my belief that this interpretation is correct, because it adds the clause that he is to be retained in that position and not discharged for only one year after such restoration, because I am convinced that Congress had in mind that a returning veteran should have the opportunity of having one year in which to rehabilitate himself, and one year to avoid open competition with his fellow employees, due to the fact that for two, three or four years he was away.

I am not going into the equity of that situation; I am not concerned with whom he has to displace. That is the way I interpret the statute, and that is the way I interpret the veteran's rights under the Selective Service Act. There is no issue here as to the collective bargaining act, but in passing I might state that the collective bargaining act before me conforms exactly, as far as I can see, to the language of the Selective Service Act. So that if there were any issue as to that, the issue would be the same because the language of the collective bargaining act is the same.

I find that on April 9th and the other eight days that the plaintiff was not allowed to work, non-veterans were employed on each and every one of those days, and I find nothing to the defense that the shaping up of the plaintiff on these nine days is not a discharge, as Local 13 has indicated. They say that he was not discharged, that he was just let out those days, which is not tantamount to a discharge, but I find no merit in that argument, because I believe that Congress intended that during the period of one year any day that there was work, between veterans and non-veterans the veteran was entitled to the preference and he was not to work only if the defendant had no work or had to choose between World War veterans of World War II.

I find that allowing non-veterans to work these nine days is a violation of the statute and the plaintiff is entitled to judgment for these nine days' work.

I do not give you a declaratory judgment because the time has expired and you are getting the money judgment that you asked for, nine days, and that judgment will suffice in this particular case. I do not know

whether you are entitled to a declaratory judgment. Offhand, I would say no, because you asked for a money judgment and I do not think you can confuse the two. But, be that as it may, it is not necessary in this case.

There has been a defense set up here, or a point made, that because of the word "seniority" used in the Selective Service Act it means that welders who worked in this plant and started their work before the plaintiff would be senior to him and that Fishgold could not replace them. That is the defense Local 13 has advanced to this Court, and, to some extent, is the same defense that the Sullivan Shipyard has advanced. In view of my decision, I do not believe it is necessary to make a finding on this point, but, if I had to, on the facts before me I would still find a judgment for the plaintiff.

I think it is only fair to state my reasons for this conclusion. The proof indicates that forty-six men were allowed to work on April 9th who were non-veterans. Their cards are in evidence. It is very confusing to make a determination based on these cards as to just who is senior, because the cards contain the information that some were tackers, some second class welders, and then eventually became first class welders. The dates and the information contained in the cards are very meager. A witness for the defendant testified that seniority in time of employment plus ability was the yardstick used to measure who should or who should not work.

In the confused state of this particular proof I would be inclined to hold that the burden of proof as to that is on the defendant and it has not sustained it. I say that because of the fact that it would be impossible for the plaintiff, nor could it be expected, that he assume this burden when the only evidence as to that is in the possession of the defendant and it would be almost impossible for plaintiff to have access to it without starting his lawsuit. I believe that Congress intended that when the plaintiff showed a prima facie case, if this defense were a good one, it intended the burden to be upon the defendant, and I believe that is the proper place to put this burden.

In view of my decision, I will respectfully ask counsel to submit findings of fact, conclusions of law, and a decree just as soon as you can.