DROSTE v. NASH–KELVINATOR CORPORATION (INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW–CIO) et al., Intervenors).

No. 5010.

District Court, E. D. Michigan, S. D.
Jan. 30, 1946.

John C. Lehr, U. S. Dist. Atty., and Morris Zwerdling, Asst. U. S. Dist. Atty., both of Detroit, Mich., for plaintiff.

Cook, Smith, Jacobs & Beake, of Detroit, Mich. (Grant L. Cook and Sydney A. Jacobs, both of Detroit, Mich., of counsel), for defendant.

Ernest Goodman, of Detroit, Mich., for the Union.

Boniface R. Maile, of Detroit, Mich., for Veterans of Foreign Wars.

LEDERLE, District Judge.

### Findings of Fact

1. This complaint was filed by the United States District Attorney to compel the defendant, Nash-Kelvinator Corporation, to restore a position to plaintiff, George Arnold Droste, a World War II Veteran whose employment with defendant had been interrupted after seven months' employment by a year's period in the armed services, and to compensate him for loss of wages claimed to be due him because of the alleged failure of the defendant to comply with the provisions of Section 8 of the Selective Training and Service Act

of 1940, as amended 50 U.S.C.A.Appendix, § 308, herein referred to as the Act. The defendant has acted in good faith in accordance with its conception of the proper interpretation of the Act.

2. Upon motion, and with the consent of both parties, the International Union, United Automobile, Aircraft, Agricultural Implement Workers of America (UAW-CIO) and Local No. 13, International Union, United Automobile Aircraft, Agricultural Implement Workers of America (UAW-CIO), herein referred to as the Union, of which plaintiff is a member, were permitted to intervene early in the pendency of this action. This organization has an employment contract with the defendant, and it likewise contends that the actions taken by defendant were in accordance with the Act.

3. Upon motion made a few days after trial, the Wayne County Council, Veterans of Foreign Wars, with a local membership of 20,000 veterans composed of 25% veterans of former wars and 75% veterans of World War II, was permitted to file a brief amicus curiae, in which it supported the position of plaintiff that World War II veterans were entitled to the so-called "super-seniority" over all other employees of an employer, including veterans of other wars.

4. The material facts involved in this case are not in dispute. Most of them were incorporated in a stipulation of facts, which is hereby adopted as part of these findings.

5. In 1942 the defendant began the operation of a plant in the City of Lansing, Mich., under contract with the United States Government, for the manufacture of aircraft propellers. The plant, machinery and equipment were owned by the Government, and the defendant managed and operated the plant on a cost-plus-a-fixed-fee basis until August 17, 1945, when the contract was terminated and operation in the plant ceased. The plaintiff was employed by defendant in this plant from May 4, 1943, until November 30, 1943, when he was inducted into military service in accordance with the provisions of the Act.

6. The National Labor Relations Board certified the Union as the exclusive bargaining representative for this plant, and Local No. 13 entered into a contract with the defendant. The plaintiff was a member of the Union, and, in accordance with the terms of the contract, was classified as a production employee. The Union contract contained detailed and specific provisions as to the seniority of the various production employees, both as to job classification and as to the entire plant. On November 30, 1943, the plaintiff was working as a camber grinder, classification YD–2, at the rate of pay of $1.39 per hour, with a 5¢ hourly bonus for working on the night shift. His seniority in this classification dated from July 19, 1943, and his plant-wide seniority dated from May 5, 1943, the date of his first employment by defendant.

7. The plaintiff received an honorable discharge from the United States Army on November 2, 1944. On November 29, 1944, he made application to the defendant for restoration to his former position as camber grinder. It is conceded that throughout the period here involved he was qualified to perform the duties of that position. On November 30, 1944, defendant restored plaintiff to his former position as camber grinder. His seniority status in this classification was established by defendant adding to his four months' seniority as camber grinder at the time he entered military service one year's additional seniority computed on the basis of the length of his period of military training and service.

8. Plaintiff continued to work as a camber grinder at the same rate of pay until January 15, 1945. On that date, plaintiff was the forty-ninth employee in line of seniority in the camber grinder classification, in accordance with the provisions of the Union contract. On January 15, 1945, defendant retained other employees, who were not veterans of World War II, in the camber grinder classification, all of whom had worked longer in that classification than the year and four months covered by plaintiff's actual employment in that classification plus his one year's military service. On that date, defendant was ready and willing to employ plaintiff in the job classification to which his plant-wide seniority would entitle him and for which he could qualify, in accordance with the Union contract. At his request, he was granted a leave of absence to obtain employment with another employer, with the understanding that he would retain all of his rights under the Union contract. On January 27, 1945, the plaintiff accepted employment at the defendant's plant in the classification to which his plant-wide seniority entitled him, at a lower rate of pay than he would have received had he continued to work as a camber grinder. He continued

to work for defendant in various classifications until May 28, 1945, upon which date he voluntarily quit. During all of the time plaintiff was not employed by the defendant, he was continued on its seniority list. On July 25, 1945, he was recalled by defendant and employed as a camber grinder at $1.39 per hour until August 17, 1945, when the manufacturing operations at the defendant's plant were terminated.

9. During the period of plaintiff's absence from defendant's plant, he was considered as being on furlough or leave of absence and was allowed all of the benefits offered by the employer, pursuant to the established rules and practices relating to employees on furlough or leave of absence, in accordance with the Union contract. Had plaintiff been willing to accept a position to which he would have been entitled under the terms of the Union contract, he would not have lost any time, but would have been compelled to accept pay at a lower rate than he was receiving as a camber grinder, and a position in a lower classification.

10. The plaintiff contends that the Act entitled him to employment as a camber grinder at $1.39 per hour so long as defendant employed any camber grinders in that plant, except other veterans of World War II of greater seniority. In other words, he claims when he was restored to his position, he should have been given a position on the seniority list ahead of all employees who were not veterans of World War II.

11. Plaintiff claims that he is entitled to recover in this action the difference between the wages he received from defendant between January 15, 1945, and July 25, 1945, and the amount he would have earned if he had worked as a camber grinder at the prevailing rate of pay during that entire period. No claim is advanced by plaintiff for the balance of the one-year period following his discharge from the army when the defendant was not operating the Lansing plant, namely, from August 14, 1945, to November, 1945.

### Conclusions of Law

1. Jurisdiction of this action is conferred upon this court by Section 8, subsection (e) of the Act, 50 U.S.C.A.Appendix, § 308(e); Hall v. Union Light, etc., Co., D.C., 53 F.Supp. 817.

2. The solution of the problem presented by this case requires a construction of subsections (b) (B) and (c) of Section 8 of the Act, 50 U.S.C.A.Appendix, § 308(b) (B) and (c), which read as follows:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \* \*

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

3. The policy of the Act is stated in Section 1(b), 50 U.S.C.A.Appendix, § 301 (b), to be that, "the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system \* \* \*."

4. General Omar N. Bradley, Administrator of Veterans Affairs, clearly stated the obvious purpose of the Act in an official release of the Public Relations Office of the Veterans Administration, dated September 24, 1945, in the following language: "Jobs cannot be found for veterans if they are not also found for other workers. Any attempt to provide full employment for one group at the expense of another would and should be destined for failure. Were such a solution forced on the nation, the only possible result would be cleavages and group struggles. The men who have borne the burden of war are entitled to advantages and to employment privileges that

720

will assure them equal opportunity with those who stayed at home and bettered themselves in civilian jobs. This is only fair."

5. It is the duty of the court to construe this Act as liberally as possible to carry out its purpose to protect the interests of returned veterans. Kay v. General Cable Corp., 3 Cir., 144 F.2d 653.

6. It is likewise the duty of the court to accept the Act as written. The wisdom of the legislation is for Congress and not for the courts.

7. As stated in Western & Southern Life Ins. Co. v. Huwe, 6 Cir., 116 F.2d 1008, at page 1009, "The first resort in ascertaining legislative intent is to give words used in a statute their natural, ordinary and familiar meaning, and that meaning will be applied unless Congress has definitely indicated the words in the statute should be construed otherwise. The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction."

8. If the Act is construed exactly as written, it will do more for veterans than plaintiff here claims without disturbing established labor relations of the employees who did not have an opportunity to join the military service in World War II. The Act does more than restore the World War II veteran to the status quo ante. It gives him the full benefit of whatever added rights he might have acquired if he had remained in his position instead of being inducted into the service. If the seniority accumulated during the time he was in the service entitled him a better job classification than he had at the time he entered the service, it is the duty of the employer to give him this better classification. There is nothing in the Act to indicate that Congress intended to cause a fellow employee to make an unequal sacrifice for the benefit of the returned veteran. The obligation to the returned veteran rests equally upon all citizens. In this connection, it must be observed that many patriotic workers were not permitted to enter active military service in World War II for the reason that the Government through its designated agencies decided that their services in the field of production were more important. Deferments were granted upon petition of the employer and after due consideration by the Selective Training and Service Boards, and not because the worker desired it. It seems obvious that Congress did not intend to penalize these essential employees by reducing their seniority status, for it is well known that without the services of the essential employees in production, it would have been impossible to carry the war through to a successful conclusion.

9. The term "restore such person to such position", as used in the Act, means a reinstatement of such person to the same relative place, rank or standing in the employment of his employer as he would have had if he had not been required to leave his employment for World War II training and service in compliance with the Act. It is conceded by plaintiff that defendant did this, but plaintiff contends that the provision "shall not be discharged [for] one year after such restoration" should be interpreted to read—"shall not be transferred or laid off from such job classification regardless of his seniority, unless the rights of another veteran of World War II are involved." In order to construe the Act in this manner, it is necessary to add language to the Act which is not there, or to disregard entirely the usual and well settled definition of the word "discharge."

10. "A discharge presumptively means that the employer no longer needs or desires his services; that he is done with him, and all contract relations are at an end." Stitt v. Locomotive Engineers' Mut. Protective Ass'n, 177 Mich. 207, 142 N.W. 1110, 1113.

11. "As a general rule * * * courts have no power to add to, or change, alter or eliminate words which the legislature has incorporated in a statute, not even in order to provide for certain contingencies which the legislature failed to meet, or to avoid hardship flowing from the language used, or to advance the remedy of the statute." Crawford Statutory Construction, pp. 345, 346.

12. The courts may interpolate words in a statute "only when the statutory language is equivocal or where literal interpretation leads to absurdity 'so gross as to shock the general moral or common sense.'" Girard Inv. Co. v. Comm., 3 Cir., 122 F.2d 843, 845; Crooks v. Harrelson, 282 U.S. 55, 59, 51 S.Ct. 49, 75 L.Ed. 156.

13. The defendant's rules and practices relating to employees' rights were established by the contract which it had with its employees. The law compelled the de-

fendant to bargain collectively with its employees. Having reached an agreement as to seniority rights of its employees, it was the duty of defendant to include such provisions in the written contract. While this contract was in effect, it was defendant's duty to live up to all of its terms, including the provisions relating to seniority rights of the employees. National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309, affirming 6 Cir., 110 F.2d 843.

14. There is no reason to believe that Congress intended to amend or repeal any part of the National Labor Relations Act when it passed the Selective Training and Service Act. No parts of the former Act are specifically repealed by the latter, and repeals by implication are not favored. United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181.

15. The sections of the Selective Training and Service Act involved herein, like the National Labor Relations Act, are intended to protect the interest of the employees, and there is no positive repugnancy between the provisions of the new law and those of the old, and by a reasonable construction effect can be given to both acts. United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181; Walling v. Patton-Tulley Co., 6 Cir., 134 F.2d 945, 948.

16. There is nothing in the legislative history of the Act that would justify a court in concluding that Congress intended to upset the established labor relations on the production front by requiring that labor contracts be construed to include provisions for placing returned World War II Veterans in a position at the head of the seniority list. The defendant restored the plaintiff to his position in accordance with section 18 of the Union contract, and that is all the Act requires.

17. The term seniority has a well recognized meaning. In the absence of specific limitation or enlargement, the right of seniority is the right of employees who have served longest to a preference as respects continuous employment. Brand v. Pennsylvania R. Co., D.C., 22 F.Supp. 569, 571. All the here involved provisions of the contract between defendant and its employees relating to seniority used that term in this commonly accepted sense. If Congress intended that established seniority practices covered by labor contracts were not to be considered, there was no occasion to mention seniority in the Act. It is not unusual to provide in labor contracts that certain employees shall head the seniority list. This provision in labor contracts must have been well known to the members of Congress, and the same type of provision for Veterans of World War II could have been specifically inserted in the Act had Congress intended the Act to so provide.

18. The Act imposes upon the employer the duty to restore the World War II veteran, with the option of restoring him either to the position he formerly occupied or to a position of like seniority, status and pay. Like seniority means the same seniority. It does not mean the head of the seniority list.

19. It is also to be noted that the language used in subsection (b)(A), § 8, of the Act, 50 U.S.C.A.Appendix, § 308(b) (A), applicable to United States Government employment of World War II veterans, is substantially the same as the language relating to private employment, and would have to be construed in the same way. If Congress intended to upset all other laws and practices relating to seniority rights of governmental employees, provision for such changes would have been clearly set forth in the Act. No justification exists for distorting the plain wording of the Act to produce such revolutionary results.

In its declaration as to policy relating to employees of states and political subdivisions thereof the same language is used in subsection (b)(C), § 8, 50 U.S.C.A.Appendix, § 308(b)(C).

There is no reason to believe that Congress intended that World War II veterans in private employment should be treated differently than those in public employment, when it used substantially the same language in all three subsections.

20. In this particular case, the plaintiff would gain a slight monetary advantage by adopting his contentions. In some cases, however, the returned veteran would lose if the construction of the Act which plaintiff seeks were adopted. If "lay-off" is construed to mean the same thing as "discharge", the World War II veteran who was inducted into the service while he was temporarily laid off could not be restored to a position, but would have to be rehired. The Act makes no provision for rehiring.

It is only by using the usual and accepted interpretation of the term "restore such person to such position" that the rights of all returned veterans can be protected.

21. The defendant fully complied with the Act when it furnished plaintiff with a position of like seniority, status and pay in accordance with the contract it had with him and its other employees. It did not discharge him as alleged in the complaint.

22. The plaintiff did not lose any wages or other benefits because of the failure of the defendant to comply with the Act.

23. It therefore follows that the complaint must be dismissed without costs, and a judgment to that effect is being entered simultaneously herewith. See also: Olin Industries, Inc., v. Barnett, D.C.S.D. Ill., 64 F.Supp. 722; Cf: Fishgold v. Sullivan Dry Dock & Repair Corp., D.C., 62 F. Supp. 25.