## DAVID v. BOSTON & M. R. R.
### No. 557.

District Court, D. New Hampshire.
March 7, 1947.

As Amended May 26, 1947.

The relevant provisions of the Act are as follows:

"8(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer * * *."

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *."

### Findings of Fact.

The petitioner entered the employ of the defendant in the capacity of laborer in 1940, and in 1941 was promoted to the status of sheet metal worker helper. In 1942 he received a rating as sheet metal worker temporary, and continued in such capacity until his induction into the armed services on March 18, 1943.

The defendant maintains a car repair plant in Concord, and it appears that the sheet metal work was and is done in a building known as Shop 4. The operations in the car repair division of the defendant expanded in some degree during 1942, but had reverted to normal in 1946 when the defendant made his application for reinstatement.

At the time petitioner was employed as a sheet metal worker there were several others similarly employed in the same department, some of whom were from other "points," by which is meant in the parlance of the industry "other repair centers."

The petitioner was honorably discharged from the armed service of the United States on December 16, 1945, and on January 28, 1946, he requested the defendant to reinstate him to his former position. No question is raised as to petitioner's qualifications to do the work performed by him prior to his entering the service.

Upon the petitioner's application, the defendant refused and continues to refuse to restore the petitioner to his former position or to a position of like seniority, status, and pay. It bases its refusal upon the claim that the position held was not one "other

Dennis E. Sullivan, U. S. Atty., and Robert D. Branch, Asst. U. S. Atty., both of Conford, N. H., and Richard H. Keefe, Asst. U. S. Atty., of Dover, N. H., for plaintiff.

Sulloway, Piper, Jones, Hollis & Godfrey and Carl C. Jones, all of Concord, N. H., for defendant.

CONNOR, District Judge.

This is an action brought by the petitioner under the reemployment provisions of Section 8 of the Selective Training and Service Act of 1940, as amended, Title 50 U.S.C.A.Appendix, § 308, as extended by the Service Extension Act of 1941, Title 50 U.S.C.A.Appendix, §§ 351–357.

The petitioner seeks reemployment with the defendant and judgment against it for loss of wages from the date of the alleged refusal to restore him to the position he held upon induction or to a position of like seniority, status, and pay.

than temporary," that the changed circumstances make restoration unreasonable or impossible, and that the job for which the petitioner held a permanent rating has been discontinued.

A letter introduced during the trial disclosed that the defendant had informed the petitioner that the job of helper had been abolished, that the petitioner was being carried as a "furloughed sheet metal worker helper," and that he was privileged to file application to work outside its local plant as a sheet metal worker helper. In correspondence with the State Director of Selective Service, the petitioner stated that he would be willing to accept a job as sheet metal worker helper "only if it is equivalent to the job I had when I went into service and only at this point."

There are two men now doing sheet metal work in Shop 4. One, with the rating of "sheet metal worker," was a fellow-employee of the petitioner at the time of his induction. The other was assigned to Shop 4 during 1946 and carries the rating of "freight car repairman."

There are no sheet metal worker helpers as such now employed, it appearing that the duties thereof are merged with the work of the present employees.

The application for reinstatement was seasonably filed by the petitioner, and having been denied this petition was brought.

### Discussion.

The primary question on the state of the record is the true employee-employer relationship existing at the time of the petitioner's induction and whether that relationship is such as would entitle the petitioner to the beneficial application of the Act.

By the terms of the statute the returning veteran is entitled to be restored to his former position or to a position of like seniority, status, and pay, if he is still qualified to perform the duties of such position and his application for reemployment is made within a stated time. The benefits under the Act are qualified, however, to the extent that the position sought must have been other than a temporary position at the time of veteran's induction and that the employer's circumstances have not so changed as to make it impossible or unreasonable to reemploy the applicant.

In the instant case the application was seasonably made, and it is not suggested that the petitioner is incompetent to perform the duties of the position applied for. Thus determination of the rights of the respective parties involves consideration only of the qualifying factors indicated above.

Sub-section (B) of Section 8 of the Act charges the employer with the duty of restoring the veteran to the position which he held before induction or to a position of like seniority, status, and pay. No handicaps are to be imposed upon him in his employee-employer relationship by reason of his military service. He is entitled to his job back if it is in existence or to similar employment unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

The policy of the Act as stated in Section 1(b), 50 U.S.C.A.Appendix, § 301(b), is that "the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system * * *."

"Every consideration of fairness and justice makes it imperative that the Statute should be construed as liberally as possible so that military service should entail no greater setback in the private pursuit or career of the returning soldier than is unavoidable." Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 654.

█ The question here presented "is not to be solved by the application of abstract tests or formulae; but the factors which usually determine the nature of a disputed relationship must be considered in the light of the purpose which Congress intended to accomplish." Kay v. General Cable Corp., supra.

The defendant argues that the rating of "sheet metal worker temporary" was a classification definitive of temporary employment only, and that by the terms of the statute it is not required to reengage the petitioner. It also contends that its circumstances have so changed since March 18, 1943, as to make it impossible or unreasonable to restore the petitioner to the position he held when inducted or to a position

of like seniority, status, and pay. It is the defendant's further contention that the permanent rating and status of the petitioner at the time of his induction was that of "sheet metal worker helper," that such position is now abolished, and it is therefore unable to offer the petitioner reemployment.

The terms "temporary" and "position" as used in the statute have a peculiar significance in the case at bar because of the circumstances of the petitioner's duties and of the coincidental use of the term "temporary" in the employer's designation thereof.

Does the term "temporary" as used in the statute define the employment in which the petitioner was engaged? It is the contention of the defendant that the duties which the petitioner was performing at the time of his induction were created solely by a surge of repair work, and the designation accorded petitioner was that of "sheet metal worker temporary." It was considered by the defendant as a nonpermanent rating as it was not anticipated that the expanded operations would continue. Because of such claimed brevity, the defendant defines the position as "temporary" and contends that it is not required to reengage the petitioner.

While I am disposed to accept the proposal that the work was "temporary," I am unable to agree that it reflected the petitioner's true position and the relative rank and standing of his employment. The employment relationship began in 1940, and this original hiring with the subsequent promotion to "helper" was of indefinite duration and was so considered by both.

"The word 'position' in the Act means the employment and not the particular job the employee was performing." Morgan v. Wheland Co., D.C., 66 F.Supp. 439, 440.

The defendant itself argues that the petitioner's real "position" was that of "sheet metal worker helper." It could hardly contend otherwise in the light of the fact that the petitioner was carried as such on the defendant's roster from July, 1942, up to the petitioner's separation, and was throughout the war and still is being carried as "furloughed sheet metal worker helper."

█ It is my view that the petitioner's real position was that of "sheet metal worker helper" temporarily assigned to the duties of a sheet metal worker, leaving him free upon discharge from the service to apply for reinstatement to his former permanent status.

But the defendant contends that the petitioner is not entitled to reemployment because (1) he has demanded only to be reinstated as a "sheet metal worker," and has not asked to be reemployed as a "sheet metal worker helper" within the statutory period required by the Act; (2) that his job as "sheet metal worker helper" has been abolished, and there is not presently available a position in that capacity or a position of like seniority, status, and pay; and (3) that its circumstances have so changed since the petitioner's induction as to make it impossible or unreasonable for the defendant to restore him to his former position or to a position of like seniority, status, and pay.

█ I am not persuaded that these contentions are well founded. While it is true that the petitioner has not in his pleadings specifically requested employment as a "sheet metal worker helper," the complaint is broad enough in its prayer to include such relief. The mode prescribed for the assertion of the veteran's claim is not to be impeded by technical objections to form. The allegations of the complaint are sufficient to have put the defendant on notice that the petitioner was claiming reinstatement. Moreover, it is unlikely that the defendant has suffered any real disadvantage, as it does not appear that it was unprepared to contest the claim.

██ Respecting the second objection, it is obvious that the defendant has misconceived the obligation imposed upon it by the terms of the Act. The benefits due the returning veteran may not be so lightly disregarded as by the simple announcement that the position is abolished and all responsibility to the employee ended. The expression as used in its ordinary sense means that no work exists which would warrant the continuance of the rating in question. As to others generally this action would doubtless be conclusive, but the

petitioner stands in a more favored category. As noted below, work in this or other similar capacity is available and under the statute such should be furnished to him. If an employer may capriciously discontinue the veteran's old position by combining it with another without offering a substitute therefor, the statute becomes a nullity. Placing the veteran on "furlough" falls far short of providing the relief to which he is entitled. "The term 'restore such person to such position', as used in the Act, means a reinstatement of such person to the same relative place, rank or standing in the employment of his employer as he would have had if he had not been required to leave his employment for World War II training and service in compliance with the Act." Droste v. Nash-Kelvinator Corp., D.C., 64 F.Supp. 716, 720.

The defendant's further objection is that its circumstances have so changed as to make it impossible or unreasonable to require it to reengage the petitioner. "Primarily, no doubt, this [language] was intended to provide for cases where necessary reduction of an employer's operating force or discontinuance of some particular department or activity would mean simply creating a useless job in order to reemploy the plaintiff." Kay v. General Cable Corp., supra [144 F.2d 655].

This is not the present case. No demand is made that an unnecessary position be created so that employment may be offered the petitioner. It is not the usual situation involving a drastic reduction of personnel or the elimination of some activity which was so characteristic of industry engaged in production of munitions. The business of the defendant is essentially unchanged. While it is not clear how many were employed in this department throughout the war or prior thereto, it does appear that there were four in 1943. Presently there are two men so attached and they are performing not only the same work as that performed by the petitioner when he was inducted but also the duties of sheet metal worker helper. The assignment to this work of one so employed occurred subsequent to the petitioner's separation. It is of further significance that such employee is not rated as "sheet metal worker" nor as "sheet metal worker helper," but is rated as "freight car repairman."

"The Act intends that the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able, either by greater efficiency or a more acceptable personality, to make it desirable for the employer to make the change a permanent one." Kay v. General Cable Corp., supra [144 F.2d 656].

The defendant has not established that its circumstances have so changed as to make it impossible or unreasonable to restore the petitioner to his former position or to a position of like seniority, status, and pay. The term "unreasonable" has been construed to mean more than inconvenient or undesirable.

It appears that the work of sheet metal worker helper has been merged with the duties of the men now performing sheet metal work. This is not a controlling circumstance. Reemployed in his permanent status of helper, the petitioner could be again assigned to sheet metal work or resume the work of helper; in either capacity likely rendering useful service.

If the defendant is to relieve itself of its obligation to reemploy the petitioner, it must produce evidence to show that there is no other position of like seniority, status, and pay to which the petitioner could be restored. Sullivan v. West Co., D.C., 67 F. Supp. 177, 180.

" * * * if the original position is no longer open, the substitute shall be a position of no greater, though no less, seniority than the lost position." Lord Mfg. Co. v. Nemenz, D.C., 65 F.Supp. 711, 723.

'The defendant suggests that the rehiring of the petitioner would necessitate the discharge of an employee whose seniority exceeds that of the petitioner and would violate an agreement which it has with a labor organization.

The petitioner is not seeking to replace a former fellow-employee whose years of service outnumber his. He asks only that his old position or one of similar character be returned to him. One of the employees who has been attached to the sheet metal

department since petitioner's induction has not thereby accumulated seniority over him, nor has the petitioner's been impaired because of his absence.

Neither is he because of the suggested contract to be barred from the right contemplated by the statute. "* * * no * * * agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 1111. "* * * if the bargaining agreement clashes with the provisions of the Selective Service Act, then the former must yield * * *." Olin Industries v. Barnett, D.C., 64 F.Supp. 722, 728.

In the light of these circumstances and mindful of the objectives of the statute, no reason appears which would justify the defendant's refusal to reemploy the petitioner.

### Conclusions of Law.

Conformably to the foregoing, it is my conclusion and ruling that the petitioner is entitled to reinstatement to the position of sheet metal worker helper, which was his permanent position when he left to enter service and training, or to a position of like seniority, status, and pay; that he is entitled to be paid as interim damages the wages he would have earned as such, less what he has otherwise earned, from the date of his application to the date of his reinstatement.

The parties will make the computation and submit it to this Court for approval.