KIRKMAN v. MacMORLAND, Brigadier General, et al.

No. 6538.

District Court, E. D. Pennsylvania.
March 28, 1947.

Thomas D. McBride, of Philadelphia, Pa., for plaintiff.

Joseph M. Friedman, Sp. Asst. to the Atty. Gen., of Washington, D. C., Russell L. Hiller, Asst. U. S. Atty., of Reading, Pa., and Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for defendants.

BARD, District Judge.

This is a motion for a permanent injunction in which the plaintiff seeks restoration to employment, and other injunctive relief.

In the course of the following findings of fact, discussion, and conclusions of law, whenever the word "veteran" is used, it is intended to refer to a person who is entitled to preference in United States Government employment under the Veterans' Preference Act of 1944.[1]

On the basis of the testimony, and the admissions and stipulations of fact by the parties, all of which were presented to the Court as on final hearing, I make the following special

Findings of Fact

1. The plaintiff is Thomas W. Kirkman.

2. Defendant Brigadier General E. E. MacMorland is the Commanding Officer of the Frankford Arsenal, Philadelphia, Pennsylvania, which is a facility owned and operated by the United States Government, under the jurisdiction of the War Department.

3. Defendant W. B. Furst is the acting Chief Personnel Officer at the Frankford Arsenal.

4. Defendant Charles D. Hertzog is the Regional Director of the Third District, United States Civil Service Commission.

5. The plaintiff was formerly employed as a machinist in Labor Group 19 at the Frankford Arsenal. As of September 13, 1946, he had been employed at the Frankford Arsenal for sixteen years and thirty-four days, and had acquired a permanent civil service status.

6. The plaintiff is not a veteran.

7. The plaintiff was one of a group of thirty-six machinists, whose total length of service averaged thirteen years and 121 days, who received notice on September 13, 1946 that they were either to be placed on involuntary furlough, or were to be involuntarily separated from their employment at the Frankford Arsenal after September 27, 1946. The plaintiff was placed on involuntary furlough for a period of eleven months from September 13, 1946, with last day of work September 27, 1946.

8. The notices of separation or furlough given to the plaintiff and 35 others on September 13, 1946, assigned as the reason for the action taken, "Reduction of personnel ceilings." This reduction of personnel ceilings was the result of a War Department directive of September 6, 1946, which ordered the Commanding Officer of the Frankford Arsenal to reduce the total number of civilian employees at that activity to a stated figure by September 30, 1946. The Commanding Officer administratively determined the number of machinists in Labor Group 19 whose ser-

---

[1] 58 Stat. 387, 5 U.S.C.A. § 851 et seq.

vices were to be dispensed with in the overall reduction which was to be effected.

9. Reductions in force within Labor Group 19 at the Frankford Arsenal had been effected prior to September 13, 1946, as follows:

| Date | Number of Employees Affected | Average Length of Service |
|---|---|---|
| October 9, 1945 | 29 | 5 years, 59 days |
| October 17, 1945 | 7 | 6 years, 40 days |
| November 30, 1945 | 31 | 5 years, 355 days |

10. The employees whose services were dispensed with in the reductions in force of September 13, 1946, as well as those listed in Finding of Fact Number 9, supra, have not been reinstated or reemployed at the Frankford Arsenal. They were selected by reference to a "Retention Register", which divided all employees competing for retention into various "Groups" and "Sub-groups".[2] Employees in "Group A, Sub-group A-1 plus" had highest priority for retention; those in "Group C, Sub-group C-4" had lowest priority for retention. The plaintiff was assigned his proper relative position within "Group A, Sub-group A-2" in the "Retention Register."

11. Between November 5, 1945 and September 13, 1946, a total of 82 veterans were restored to employment as machinists in Labor Group 19 at the Frankford Arsenal. All of these veterans had been em-

[2] Group A: All employees who have met all requirements for indefinite retention in their present positions. With respect to positions subject to the Civil Service Act and Rules, this includes all employees currently serving under absolute or probational civil service appointments or who were appointed, reappointed, transferred or promoted from absolute or probational civil service appointments to war service indefinite or trial period appointments without a break in service of 30 days or more. With respect to positions excepted from the Civil Service Act and Rules, this includes all employees currently serving under appointments without time limitation.

A-1 plus (During one-year period after return to duty, as required by law)

A-1 With veteran preference unless efficiency rating is less than "Good".

A-2 Without veteran preference unless efficiency rating is less than "Good".

A-3 With veteran preference where efficiency rating is less than "Good".

A-4 Without veteran preference where efficiency rating is less than "Good".

Group B: All employees serving under appointments limited to the duration of the present war or for the duration of the war and not to exceed six months thereafter, or otherwise limited in time to a period in excess of one year, except those specifically covered in Groups A and C.

B-1 With veteran preference unless efficiency rating is less than "Good".

B-2 Without veteran preference unless efficiency rating is less than "Good".

B-3 With veteran preference where efficiency rating is less than "Good".

B-4 Without veteran preference where efficiency rating is less than "Good".

Group C: All employees serving under appointments specifically limited to one year or less, all non-citizen employees serving within the continental limits of the United States, all employees continued beyond the automatic retirement age, and all annuitants appointed under section 2(b) of the Civil Service Retirement Act, as amended, 5 U.S.C.A. § 715(b).

C-1 With veteran preference unless efficiency rating is less than "Good".

C-2 Without veteran preference unless efficiency rating is less than "Good"

C-3 With veteran preference where efficiency rating is less than "Good".

C-4 Without veteran preference where efficiency rating is less than "Good".

ployed as machinists at the Frankford Arsenal, and had acquired permanent civil service status, before their entry into the armed forces. As of September 13, 1946, 50 of these veterans had less than six years and 33 days' service in Government employment; 66 had less than six years and 277 days' service, and 77 had less than seven years and six days' service. All but eight were reemployed between December 1, 1945 and September 13, 1946. All 82 have been retained at the Frankford Arsenal.

## Discussion

The plaintiff contends that he was illegally placed on involuntary furlough from his employment at the Frankford Arsenal. He bases his contention on the fact that he was placed on involuntary furlough because he was required to compete for retention in Labor Group 19 with 82 veterans on September 13, 1946. The plaintiff concedes that, under Section 12 of the Veterans' Preference Act of 1944[3], these 82 veterans had superior rights to retention, provided they were, as of September 13, 1946, properly a part of the total labor force within which the reduction was effected.

The plaintiff argues, however, that a majority of these 82 veterans were not properly members of Labor Group 19 because their restoration to employment had been illegal. He points to the fact that these veterans had been reemployed between November 5, 1945 and September 13, 1946, whereas 67 employees had been discharged between October 9, 1945 and November 30, 1945, because of reductions in force in Labor Group 19; and that a majority of the veterans who were reemployed had a shorter length of service than a corresponding number of the employees who had been previously discharged and had not been reinstated. The plaintiff argues that there must have been a vacancy within Labor Group 19 upon each occasion when a veteran was reemployed; that, in filling such vacancy, the veteran was competing for reemployment with those employees who had been previously discharged; and, in such competition, he argues, the person with the greater length of service should have been reinstated irrespective of whether or not he is a veteran. If the person with the greater length of service had prevailed, says the plaintiff, a majority of the 82 veterans would not have been reemployed; the employees who had been previously discharged would have been reinstated instead.

The conclusion of the plaintiff's argument is that if the discharged employees who, according to his view, should have been reinstated, had actually been reinstated, the plaintiff would have been competing with them, instead of with a like number of veterans, for retention on September 13, 1946; and, in that competition, the plaintiff would have prevailed, and he would not have been placed on involuntary furlough.

The basic problem underlying this case, then, is how many, if any, of these 82 veterans with permanent civil service status were improperly restored to employment in Labor Group 19 at the Frankford Arsenal. The defendants suggest that that problem may be summarily disposed of by reference to Section 8 of the Selective Training and Service Act of 1940[4], which they

---

[3] 58 Stat. 390, 5 U.S.C.A. § 861.

[4] "Sec. 8(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 3(b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

(A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay;

construe as an unconditional mandate to restore to employment any returning veteran with permanent civil service status. The defendants say that, under Section 8(b) (A) of the Act, the restoration to employment of all 82 of these veterans was not only proper, but was actually required by law.

I cannot agree that the main issue in this case may be disposed of so easily, because I do not think that the Selective Training and Service Act of 1940, of itself, required the Government to reemploy these 82 veterans in Labor Group 19. In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, the Supreme Court, in construing the words "position" and "position of like seniority", in Section 8(b) (B) of the Act, and "shall be so restored without loss of seniority" in Section 8(c) of the Act, said at 328 U.S. 285, 66 S.Ct. 1111:

"* * * these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. * * * by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible. No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more."

The Supreme Court also said, in the Fishgold case, at 328 U.S. 287, 66 S.Ct. 1112: "The 'position' to which the veteran is restored is the 'position' which he left plus cumulated seniority." I recognize that in construing Section 8(b) (B) of the Selective Training and Service Act, the Supreme Court was dealing with the section which defines the duty of the private employer to restore the veteran to employment. However, the words in Section 8(b) (B) of the Act which the Supreme Court was construing are exactly the same words which are used in Section 8(b) (A) of the Act, which deals with the obligation of the United States Government to reemploy the veteran.

In the case of Droste v. Nash-Kelvinator Corporation, D.C., 64 F.Supp. 716, at page 720, the Court said: "The term 'restore such person to such position', as used in the [Selective Training and Service] Act, means a reinstatement of such person to the same relative place, rank or standing in the employment of his employer as he would have had if he had not been required to leave his employment for World War II training and service in compliance with the Act."

I think that if, in competition for reinstatement or reemployment, the veteran with permanent civil service status were to be preferred over another former employee with permanent status who had greater length of service (counting the veteran's time spent in the armed forces as service in his employment), that such preference would certainly amount to a step-up or gain in priority in favor of the veteran,

(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;
(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration * * *". Selective Training and Service Act of 1940, 54 Stat. 885, 890, § 8, as amended, 58 Stat. 798, 50 U.S.C.A.Appendix, § 308.

and would grant the veteran a more advantageous relative place, rank or standing in his employment than he would have enjoyed, had it not been for his service in the armed forces. From the portions of the Fishgold opinion which I have quoted above, I think it is clear that the Selective Training and Service Act contemplates no such preference.

Although I do not think that the Selective Training and Service Act required the Government to reemploy the 82 veterans in question in the instant case, we must consider the rights of these veterans under the Veterans' Preference Act of 1944, supra. That Act, as distinguished from the Selective Training and Service Act, grants the returning serviceman preference, rather than equality, in Government employment.

Section 2 of the Veterans' Preference Act of 1944 provides: "In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil service; * * * preference shall be given to * * * those ex-servicemen and women who have served on active duty in any branch of the armed forces of the United States, during any war, or in any campaign or expedition (for which a campaign badge has been authorized), and have been separated therefrom under honorable conditions."

The problem to be determined first, then, in the instant case is one of reinstatement or reemployment; and the immediate question is, to what measure of preference is the veteran with permanent civil service status entitled, in competing for reinstatement or reemployment with a non-veteran who, like the veteran, had formerly held the job which both are seeking, and who had previously been furloughed or separated therefrom because of a reduction in force? The Veterans' Preference Act neither delineates nor qualifies the veteran's right of reinstatement or reemployment in this exact situation, nor does the legislative history of the Act furnish any assistance in answering this exact question.

The point which the plaintiff raises is that the veterans in the instant case who were reinstated should not have been entitled to preference over the non-veterans who had greater length of service. However, I can find no support for this contention, either directly or by implication, from the other provisions of the Veterans' Preference Act. On the contrary, I think that the other provisions of the Act, considered separately and also as a whole, compel a conclusion directly contrary to that which the plaintiff suggests.

Nowhere in the sections of the Act which deal with certification for appointment, appointment, or, in particular, retention, do I find any provision whereby the veteran's right to preference may be defeated by reason of a competitor's possessing greater length of service. I mention "retention" particularly, because it seems to me that the plaintiff's theory in the instant case presents a factual situation which is the converse of the "retention" factual situation. In the "retention" situation, the problem is, who, from among those employed, will lose his job; and in the instant case, the problem presented by the plaintiff's argument is, who, from among those unemployed, was entitled to get his job back again. I think that it may be logically argued that the same considerations should apply in both instances. On the question of "retention", I think that it is clear under Section 12 of the Veterans' Preference Act, supra, and indeed the plaintiff concedes, that the veteran with permanent civil service status is entitled to preference over all others, regardless of comparative lengths of service.

My conclusion, then, is that, under the Veterans' Preference Act, the 82 veterans in the instant case were legally restored to employment as machinists in Labor Group 19 at the Frankford Arsenal between November 5, 1945 and September 13, 1946; and it follows that the plaintiff was properly required to compete with these 82 veterans for retention on September 13, 1946, when the reduction in force was effected, which reduction resulted in the plaintiff's being placed on involuntary furlough.

### Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. Under the Selective Training and Service Act of 1940, a veteran with permanent civil service status is not entitled to preference in reinstatement or reemployment over a competing non-veteran with permanent civil service status and greater length of service.

3. Under the Veterans' Preference Act of 1944, a veteran with permanent civil service status is entitled to preference in reinstatement or reemployment, over a competing non-veteran with greater length of service.

4. The plaintiff's motion for a permanent injunction is denied.