372

Jac Chambliss, of Chattanooga, Tenn. (Chambliss, Chambliss & Brown, of Chattanooga, Tenn., on the brief), for appellant.

Ferdinand Powell, Jr., of Johnson City, Tenn. (J. B. Frazier, Jr., U. S. Atty., of Chattanooga, Tenn., and O. T. Ault, Assts. U. S. Atty., of Pikeville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This action was brought on behalf of the complainant, Floyd Columbus Miller, against his employer, Combustion Engineering Company, Inc., by the United States Attorney for the Eastern District of Tennessee, in pursuance of the provisions of the Army Reserve and Retired 'ersonnel Service Law of 1940, Resolution of August 27, 1940, Chapter 689, Sec. 3, 54 Stat. 859, as amended by the Act of December 8, 1944, Chapter 548, Sec. 2, 58 Stat. 799, U.S.C.A., Title 50, App., § 403.

After considering the testimony and documentary evidence adduced by both parties upon the trial of the case, the district judge filed a memorandum opinion, findings of fact and conclusions of law, in conformity with which judgment was entered for the plaintiff for wages lost from the time of his discharge by the employer on November 2, 1945, to the time of his reemployment on April 17, 1946, at his wage rate of pay at the time of his discharge, less the amount earned by him during the stated period. The employer has appealed.

Appellant stresses that the employee was not "discharged" by it within the meaning of the pertinent Act of Congress, Section 8(c) of the Selective Training and Service Act of 1940, Title 50 U.S.C.A.Appendix, § 308(c), which provides: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) * * * shall not be discharged from such position without cause within one year after such restoration." It is emphasized that appellee was not discharged "without cause" within the meaning of the act.

Heavy dependence is placed by appellant upon the opinion of the Supreme Court in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284-291, 66 S.Ct. 1105, 1110-1114, 90 L.Ed. 1230, 167 A.L.R. 110, wherein it was held that the temporary "lay-off" of an employee who had received his certificate of honorable discharge from the Army, while other employees with higher shop seniorities were permitted to work, did not violate Section 8 of the Selective Training and Service Act of 1940, inasmuch as a veteran is not granted thereunder an increase in seniority over what he would have had if he had never entered the armed services, and inasmuch as an employee who has been laid off in accordance with a seniority system and put on a waiting list for reassignment has not been "discharged" within the meaning of Section 8(c), which forbids the discharge of a

reemployed veteran without cause within one year. It should be observed that the Supreme Court declared that "no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act"; and that "our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." The Supreme Court stated, further, that "in common parlance and in industrial parlance a person who has been laid off by operation of a seniority system and put on a waiting list for reassignment would hardly be considered as having been 'discharged'." It was pointed out that the slackening of work which causes an employee to be laid off by operation of a seniority system is neither a removal nor a dismissal from his "position" in any normal sense.

These principles are, of course, controlling; and, if there were not an obvious differentiation between the Fishgold case and that at bar, appellant's position would be well grounded. But, upon analysis, a material difference between the two cases is apparent. In Fishgold, there was a denial of the claim of a veteran to the right to be retained in employment in preference to non-veterans of higher shop seniority than he, where a layoff of some of the employees became necessary.

In the instant controversy, the district court found, upon substantial evidence, that the employer had failed to establish that there was no available position to which the appellee was entitled at the time he received a separation notice, assigning "lack of work" as the reason for dismissal. Moreover, the notice on its face provided that the appellant company had permanently ceased to employ appellee, along with other named employees. Reasoning that knowledge of available positions and seniority of employees "was peculiarly under the control of the defendant", the district court concluded that when plaintiff adduced evidence of his discharge and of the reasons assigned therefor he made a prima facie case of discharge without cause; and

that, thereafter, the burden of proving that there was no available position to which the plaintiff was entitled rested upon the defendant. It was found that this burden had not been carried.

It was deemed of some significance that, while the appellee veteran was reemployed in conformity with the law upon his honorable discharge from the armed services, he was apprised by a notice posted on the company's bulletin board within four days after his reemployment that his services would not be needed after five additional days, for the reason that the force was being reduced on account of a change-over from wartime to peacetime production. And so, the district court found that nine days after his reemployment the appellee was discharged by the appellant without just cause.

Upon examination of the record, we cannot say that the findings of the trial court were in any respect clearly erroneous. The appellee testified that he was a girth seam welder at the time he left the Combustion Engineering Company's employ to go into the Navy, and that he had been used occasionally as a tack-up welder for about three months before he entered military service. He swore that he could do the tack-up welder job and had asked the company to let him "roll" a tack-up man, younger than he in seniority, who was retained in the company's employ; but that his request was denied. The company kept employed several tack-up welders junior to him in seniority, according to his testimony. One of these men corroborated appellee as to this. The tack-up job which he wanted was in a different department from that in which he was working when laid off. The girth seam welder job which he held was a higher position than that of tack-up man, so he testified.

Appellee was offered the job of clean-up man, which was inferior in rank and pay to the position held by him at the time he left for military duty and for nine days after his return. This job he declined, until forced by economic necessity to take it five and a half months later.

The testimony of witnesses for appellant conflicted with that of the appellee in cer-

tain respects. The foremen of the fit-up department, in which there was a tack-welder job which appellee requested when he received his separation notice, testified that the applicant had never been classified in his department as a tack-welder, but had been loaned for use as such for a few days before he entered military service. This custom of transferring from one department to another had been established, regardless of the ability of the man transferred. This witness stated that some of the fit-up men were afraid to work with the appellee, because he was not up to the standard set for tack-welders. Asked whether or not he gave appellee a chance to see whether he could do the job after his return from the Navy, he answered: "That is not the policy. The man rolling must be able to do the work." He added, upon inquiry, that he had not tried out the appellee to see whether or not he could perform the work.

The foreman of the welding department, in which appellee worked, testified to his refusal to take a cleaner's job after receiving his separation notice, but admitted that on several occasions appellee had been loaned to the fit-up department when "they were short a tack-welder." In response to questions by the court, this witness admitted that when the returned veteran was re-employed he was not informed that he was being restored to his old job only temporarily. A fit-up mechanic in that department gave evidence that he had told appellee that the latter could not do the work of tack-welding.

An employee of the personnel department of the appellant company, in charge of re-employment of returning veterans, testified that it was necessary to lay off the appellee under seniority provisions, on account of lack of work; but, on cross-examination, he admitted that the department foreman's judgment was followed in weighing the ability and experience of the man, and that appellee was not tried out on the job of tack-up man to determine his capacity to fill it.

In these circumstances, it cannot, in our judgment, be logically said that the appellee was discharged for just cause. We agree with the finding of the district court that the appellant failed to establish that there was no available position of the same grade which he held for which the appellee was qualified at the time of his discharge from employment.

We have examined the several district court opinions cited by appellant and are not convinced that any demonstration is made from them that the district court committed error in the case at bar. It should be observed that, in the prolonged litigation in New Jersey instituted by Dr. Kay, a returning soldier, to compel his reinstatement as medical director of a corporation, the court of appeals reversed the district court's denial of his right to reinstatement. See Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653. The follow-up opinions of the district court do not seem to have been reviewed by the court of appeals and, moreover, are distinguishable on the facts of the case from the circumstances confronted here. See Kay v. General Cable Corporation, D.C., 59 F.Supp. 358; Id., D.C., 63 F.Supp. 791.

Meyers v. Barenburg, 4 Cir., 161 F.2d 850, is likewise not apposite in view of its factual differentiation. There, an attorney, when he entered military service in 1943, was employed by a physician to collect accounts on a basis of salary plus commission. On the doctor's books, these accounts totalled $32,000 at that time. When, in 1945, the attorney sought reemployment under the Selective Training and Service Act, the doctor's accounts amounted to less than $6,000. It was held that the doctor was justified in refusing to reinstate the attorney on a salary basis, in addition to commission, for the reason that the circumstances had so changed as to make it unreasonable to require him to do so.

Droste v. Nash-Kelvinator Corporation, D.C.Mich., 64 F.Supp. 716, is not in point. In that case, the veteran asserted his right to super-seniority over employees who were not veterans of World War II. Here, the veteran makes no such claim. He merely asserts his right to replace an employee of inferior seniority in the doing of work which appellee insists he was competent to do when discharged.

The judgment of the district court is affirmed.